IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN C. DAILEY,

    *Plaintiff,*

v.

SUNGAH PARK, et al.,

    *Defendants.*

Case No.: 1:05-CV-02012
Judge Ricardo M. Urbina

## DEFENDANTS' MOTION TO INCREASE PROTECTIVE ORDER PAYMENTS

COMES NOW THE DEFENDANTS, Sungah Park and Ayal Factor, by counsel, and hereby move this Honorable Court to increase the amount of the protective order payments to require that Plaintiff, Jonathan Dailey, pay $2,867.01 per month (an increase of $1,367.01) into the Court Registry until this matter is concluded. Defendants' also request that Dailey pay $7,165.48 into the Court Registry as security for a mechanic's lien that has been filed against the Property and $8,475.00 in rent due from May 2005 – August 2005. In support of their Motion, the Defendants submit the accompanying Statement of Points and Authorities and proposed Order.

                                            Respectfully submitted,

                                            GREENSTEIN DELORME & LUCHS, P.C.

                                            _____
                                            James D. Sadowski, No. 446635
                                            1620 L Street, N.W., Suite 900
                                            Washington, D.C. 20036-5605
                                            *Counsel for Defendants Sungah Park*
                                              *& Ayal Factor*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of Defendants' Motion to Increase Protective Order Payments was filed electronically with the Court this ~~13~~ 14th * day of January, 2006, and that the following person should receive notice electronically via the Court's ECF system:

>Jonathan C. Dailey
>3 Bethesda Metro Center
>Suite 530
>Bethesda, MD 20814
>*Pro Se Plaintiff*

James D. Sadowski

\* ECF website was down 1/13/06 circa 7:15pm.
JS

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN C. DAILEY,

    *Plaintiff*,

v.

SUNGAH PARK, et al.,

    *Defendants*.

Case No.: 1:05-CV-02012
Judge Ricardo M. Urbina

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO INCREASE PROTECTIVE ORDER PAYMENTS

The Defendants, Sungah Park and Ayal Factor, by counsel, have moved this Honorable Court to increase the protective order payments and to require that additional payments be made into the Court Registry. In support of their Motion, the Defendants state as follows:

### BRIEF FACTUAL BACKGROUND

1. This case is about a dispute under a Repurchase Option Contract ("Contract") involving a residential condominium unit located at 1080 Wisconsin Avenue, N.W., Unit 2006, Washington, D.C. (the "Property"). The Plaintiff, Jonathan Dailey ("Dailey"), sold the Property to Defendant Park ("Ms. Park") in August of 2003. The Contract allowed Dailey to repurchase the Property from Ms. Park provided that certain conditions were met, i.e., if Dailey failed to pay rent to Ms. Park, and that failure continued for thirty days, Dailey then had thirty days to exercise his repurchase option or the option would become void. A copy of the Contract is attached as

Exhibit A.[1]

2.      The Contract provides that Dailey must make monthly payments of rent to Ms. Park, but does not list the precise amount of those payments. One of the reasons the exact amounts were not listed in the Contract was because the parties knew that several of the components that comprised the monthly payments (such as interest) might change over time. The relevant provision of the Contract concerning payment reads:

> Rent shall include the mortgage payment plus the condo fee. If the rent is more than fifteen (15) days late, a fee of $75 will be added to that month's rent. If the rent is more than thirty (30) days late, Seller must exercise the repurchase option with thirty (30) days thereafter or this Agreement is null and void. After the first year, <u>rent shall equal the mortgage interest only, property taxes, and condo association monthly fee</u>.

Exhibit A at 1, Section 6 (emphasis added).

3.      Dailey always received advanced written notice as to the monthly amount that was due, yet he was still repeatedly late in making the monthly rental payments to Ms. Park. Each month when he was late, Dailey usually offered an excuse as to why he did not pay the rent on time. Dailey's most common excuse was to say that he could not pay the rent because he was waiting to receive settlement funds from cases that he was working on. Daily repeatedly fell behind, sometimes for several months. For example, as of April 1, 2005, Dailey had failed to pay rent for the last five months (December 2004 – April 2005).

4.      Dailey's payment problems are apparently not limited to his failure to pay rent. Defendants believe that discovery will reveal that Dailey is, and has been for some time, in severe financial distress, and that he has multiple creditors chasing after him for various unpaid

---

[1]    Exhibit A is an unsigned copy of the Contract. Although it is not now known whether an original of the Contract signed by both Dailey and Park exists, it is not disputed that Exhibit A represents the final version of the Contract.

2

debts. For example, Ms. Park recently received notice that a mechanic's lien had been filed by The Minkoff Company, a renovation company that Dailey apparently hired to perform renovation work in the Property. See Exhibit B. The mechanic's lien notice indicates that $7,165.48 has not been paid by Dailey.

5. In August of 2005, when Dailey was four months in arrears (May, June, July, and August 2005 rent past due), Defendants' obtained counsel. In September of 2005 Defendants' counsel made written demand upon Dailey to pay all of the back rent that he owed. Dailey refused and instead filed a multi-count complaint against the Defendants with the D.C. Superior Court. Defendants removed that action to this Court. Dailey adopted a "throw in the kitchen sink approach" to pleading as his Complaint lists eleven counts, when in essence this is a very simple contract case that boils down to limited factual issues: Did Dailey lose his right to exercise a repurchase option because he repeatedly did not pay his rent on time? Defendants believe the answer to that question is clearly "yes."

6. Dailey has not made any rent payments to Ms. Park since paying April 2005 charges. Dailey has essentially been living in the Property "rent free" for eight months. While Dailey has continued to enjoy the use and benefit of the Property "rent free," Ms. Park still has a mortgage to pay. Ms. Park must also pay the property taxes, the monthly condominium maintenance fees, and special assessments. Ms. Park's failure to pay any of those amounts could result in a foreclosure. The inequity of the current arrangement is readily apparent.

7. After much prodding, Dailey agreed to the entry of a consent protective order of $1,500 per month, effective December 1, 2005. The Court established the protective order in that amount in the Order entered on January 11, 2006. Although Dailey's payment of $1,500 per month does provide some degree of protection to Ms. Park, it is inadequate protection because the carrying costs of the Property are now much higher than $1,500 per month.

3

ARGUMENT

8.    The use of the protective order as an equitable device by this Court is well-established in this jurisdiction. A protective order is used to protect a landlord from "the severe disadvantages of foregoing rent during a period of prolonged litigation." Dameron v. Capitol House Assocs. Ltd. P'ship, 431 A.2d 580, 583 (D.C. 1981); Bell v. Tsintolas Realty Co., 430 F.2d 474, 482 (D.C. Cir. 1970). The issuance of a protective order has become the norm, rather than the exception. See Mahdi v. Poretsky Management, Inc., 433 A.2d 1085, 1086 (D.C. 1981). Factors that the Court should consider when entering a protective order are: "the amount of rent alleged to be due, the number of months the landlord has not received even a partial rental payment, the reasonableness of rent for the premises, the amount of the landlord's monthly obligations for the premises, . . . and whether the landlord faces a substantial threat of foreclosure." Dameron, 431 A.2d at 583, n5 (citing Bell, 430 F.2d at 484).

9.    The Court should enter an increased protective order based upon the five Bell factors, which, when applied to the facts of this case, weigh heavily in favor of Ms. Park. Dailey has not paid rent since April of 2005. The rent last paid by Dailey (April of 2005) under the Contract was $1,751.81 per month. Since that time, the carrying costs being paid by Ms. Park -- the "landlord's monthly obligations for the premises" under Bell -- have increased. As of January 2006, Ms. Park must pay a monthly mortgage interest payment of $1,268.70, property taxes of $395.93, a monthly condo fee of $602.88, and a special assessment of $450.50. See Exhibit C. Those charges alone, which Dailey would have had to pay himself if he had not lost his right to exercise the repurchase option, total $2,718.01. Dailey also agreed to pay an "add on" fee under the Contract that is now $150.00 per month. Accordingly, the total monthly amount of the protective order should be increased to $2,867.01. That amount is reasonable

4

under <u>Bell</u> because it represents that actual carrying costs for the Property, plus the add on fee that Dailey agreed to pay -- and did pay before -- under the Contract.

10. The threat of foreclosure is more than substantial under the last <u>Bell</u> factor. Ms. Park faces a threat of foreclosure if she does not pay the mortgage interest, the condominium maintenance fess, or the special assessments. Ms. Park also faces problems as a result of the mechanic's lien being filed because the lien claimant can institute proceedings to enforce the lien, thereby raising the specter of another type of foreclosure. Accordingly, it is appropriate for the Court to also order Dailey to pay into the Court Registry the amount of the mechanic's lien ($7,165.48).

11. The Court should also order Dailey to pay into the Court Registry the amount of unpaid rent owed from May – August 2005 ($8,745.00). Dailey's theory of the case is that he should have been able to exercise the repurchase option sometime in the August 2005 time frame. Even if that were true (Defendants' don't agree with Dailey's position), there is no question that had Dailey been able to exercise the repurchase option, he would have still owed those amounts to Ms. Park. In fact, Dailey was actually negotiating to pay the back rent amounts to Ms. Park in a lump sum when he was trying to obtain a mortgage on the repurchase.

12. Ms. Park will be at a distinct disadvantage in the litigation if the protective order payment is not increased to cover the full carrying costs of the Property. That is because Dailey can sit back and pay a reduced amount for the property, prolong the litigation, and if Ms. Park's Counterclaim is successful, she will then have to try to collect the rental deficiency from Dailey as there will be insufficient funds in the Court Registry. If Dailey is successful, however, he can obtain a release of the protective order payments at the end of the case – monthly payments that he would have had to make anyway had there not been any dispute about the repurchase option.

To put it another way, the Court should increase the protective order payments so that Ms. Park is not compelled to subsidize Mr. Dailey's housing expenses while this litigation is pending.

13.   Ms. Park will also be at a distinct disadvantage if the Court does not order Dailey to pay the additional amounts into the Court Registry for the mechanic's lien ($7,165.48) and the back rent from May – August 2005 ($8,475.00). If Dailey is left unchecked, he can easily request that additional work be performed in the Property and then refuse to pay for that work, which could result in additional mechanic's liens being placed on the Property. Dailey also cannot have it both ways. If Dailey's position is that he still had a right to exercise the repurchase option in August 2005, then he unquestionably owes Ms. Park the rental amounts that were due prior to any exercise of that right.

WHEREFORE, for these reasons, and for any reasons that may be advanced at a hearing on this Motion, Defendant Sungah Park and Ayal Factor, respectfully request that the Court: (a) increase the protective order payment to $2,867.01 per month (retroactive to December 1, 2005); (b) Order Dailey to pay an additional $7,165.48 into the Court Registry to cover the mechanic's lien that has been placed on the Property; and (c) order Dailey to pay an additional $8,475.00 into the Court Registry for rental amounts owed from May– August 2005.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

_____
James D. Sadowski, No. 446635
Richard W. Luchs, No. 243931
1620 L Street, N.W. - Suite 900
Washington, D.C. 20036-5605
(202) 452-1400
*Counsel for Defendants Sungah Park*
*& Ayal Factor*

279765v2

6