IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY,<br><br>   Plaintiff,<br><br>v.<br><br>SUNGAH PARK,<br><br>and<br><br>AYAL FACTOR,<br><br>   Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:  Case No.: 1:05-CV-02012<br>:  Judge Ricardo M. Urbina<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO INCREASE PROTECTIVE ORDER PAYMENT AND PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING**

  Plaintiff, Jonathan C. Dailey, pro se, opposes Defendants Sungah Park's and Ayal Factor's motion to increase the protective order payments on the grounds set forth as follows. Additionally, Plaintiff requests an evidentiary hearing on the issue of the proper amount of protective order payments by both parties.

**INTRODUCTION AND BACKGROUND**

  In or about August, 2003, Defendant Factor was introduced to Plaintiff through a mutual friend to enter into a "repurchase" agreement that would allow Plaintiff to draw on the significant equity in his condominium. The general agreement was that Defendant Factor would purchase Plaintiff's condominium at far below market value for $270,000 and receive thousands

of dollars for himself in exchange for Plaintiff's right to repurchase the condominum at $216,000 within three years.[1]

Due to Defendant Factor's poor credit, he did not qualify for a mortgage, so he solicited his wife, Defendant Park, to apply for the mortgage. Defendant Park, upon information and belief, was unemployed and could not qualify for a mortgage. Remarkably, her application was approved and a mortgage was secured.[2]

When Plaintiff attempted to exercise his repurchase option in or about March of 2005, Defendant Factor conspired with Defendant Park to deny that option. After denying Plaintiff his right to repurchase, Defendant Park submitted a *second fraudulent application* for a line of equity on Plaintiff's condominium. Upon information and belief, this fraudulent application was approved in 2005 and Defendant Park essentially converted over $100,000 in equity from Plaintiff. Defendant Park took these actions after this lawsuit had been filed, knowing that she would likely lose. Rather than adjudicate the issues of this case, Defendant Park rushed to drain as much equity from the property as she could.

This action was filed by Plaintiff alleging a variety of common law and statutory causes of action against Defendants Park and Factor. Defendants counterclaimed on a sole cause of action for breach of contract (and a related count for possession). Plaintiff has alleged generally

---

[1] Plaintiff had an outstanding mortgage of $116,000 on the property at the time of the repurchase agreement. The purchase price was $270,000 and the interest only mortgage on that purchase was $216,000. The repurchase option was to allow Plaintiff to repurchase the condominium for $216,000 within three years. When the Defendants wrongfully denied the Plaintiff's right of repurchase, the property was valued at nearly $475,000. If Defendants are able to wrongfully deny Plaintiff's right of repurchase, they will have taken almost $300,000 from Plaintiff.

[2] Plaintiff intends in discovery to ascertain how Defendant Park secured the first and second mortgages. It is Plaintiff's theory that Defendant Park never intended to honor the repurchase agreement. If so, she is liable for fraud in the inducement. If discovery reveals that Defendant Park solicited falsified employment documents or fraudulently confirmed that she would occupy the condiminium as her primary residence, or fraudulently confirmed that the property was not the subject of litigation, Plaintiff will seek to have both transactions deemed void as fraudulent.

that Defendants engaged in deceptive discussions regarding the repurchase option contract with Plaintiff and during the tenure of the agreement. Despite repeated statements and actions to reassure Plaintiff that they had no intention of attempting to forfeit his right of repurchase, when Plaintiff attempted to secure Defendant Park's cooperation in the repurchase, she and Defendant Factor conspired to deny Plaintiff the same.

Incredibly, the attempt to refuse the repurchase took place *after the property had suffered a severe fire* in or about Februrary, 2005. The fire was caused by defective internal electric circuity, the responsibility for which was Defendants. Although Plaintiff almost died in the fire and it left the property uninhabitable, Plaintiff continued to pay rent for four additional months while simultaneously having to pay for other housing. However, in or about the spring of 2005, when Defendants refused to participate in the repurchase process, Plaintiff terminated rent payments.

When advised of the fire that destroyed "their" property, Defendants took <u>absolutely no actions</u> to repair the devastated property and essentially abandoned it. Plaintiff took all necessary steps to repair the property and even paid $8,000 for repairs. Once the Defendants made it clear that they intended to deny Plaintiff his right of repurchase, Plaintiff did not pay the balance owed for repairs, approximately $8,000, because Defendants were attempting, in essence, to convert Plaintiff's property. There is outstanding, as well, $5,000 in clean up costs from the fire that remains unpaid. These outstanding balances are the *sole* responsibility of the Defendants.

**I.    Plaintiff's Agreement to Pay $1,500 Monthly Protective Order Payments Reflects the Terms of the Repurchase Contract and Defendants Should Not Be Permitted to Benefit from Their Wrongful Denial of Plaintiff's Right of Repurchase.**

Although Defendants have breached the terms of the Repurchase Agreement, by its terms, Plaintiff was to pay rental payments equal to the mortgage payment (an interest only payment of approximately $800) and a $475 condominium fee. Remarkably, Defendants have the audacity to ask this Court to increase the payments based upon the fact that the mortgage payment almost doubled *because Defendant Park wrongfully took out a second mortgage (equity line) of over $100,*000. Defendant Park increased the mortgage on the property by over $100,000 (converting Plaintiff's equity) and now perversely asks this Court to order Plaintiff to increase his payments to cover the second mortgage.

The attempt to add "late" charges or to otherwise argue for an increase is also outrageous in light of the fact that Defendants *owe* the Plaintiff approximately $7,000 in rent that should not have been paid when the property was uninhabitable and nearly $8,000 in repairs that Plaintiff paid for after the fire. Plaintiff was responsible for cleaning the property, ordering the repairs and reconstruction of the property – Defendants took NO actions whatsoever in this regard. But as soon as the property was rendered habitable again, Defendants launched their plan to deny Plaintiff's right to repurchase and hired lawyers to further their goals. The extent to which the actions of the Defendants have robbed the Plaintiff of his home, his equity and hundreds of thousands of dollars shocks the conscience. It is Plaintiff's intent to reveal the Defendants' scheme to a jury to secure finally the return of his home and the equity that he worked so hard to build over the years.

**II**.	**Defendants Should Be Required to Pay Into the Court Registry the Amounts Expended by Plaintiff in Rent that Should Not Have Been Paid ($7,000), in Repair Expenses ($8,000), and Outstanding Bills for Repair ($8,000 ) and Clean-up ($5,000)**.

When the fire destroyed the condominium in February 2005, Defendants Park and Factor waited until it was repaired before they advised Plaintiff that they were denying his right to repurchase. In the interim, Plaintiff had to find and pay for other housing, continued to make rental payments and coordinated the reconstruction of the property. Obviously, Plaintiff took these steps to repair *his* property because he never imagined that Defendants would conspire to deny him his right of repurchase. Nevertheless, since Defendants are now attempting to keep Plaintiff's property, they should be required to pay into the Court registry that amount of money expended by Plaintiff to repair the property, in addition to rent paid by Plaintiff during the time period when the property was uninhabitable.

**III.**	**Plaintiff Requests An Evidentiary Hearing on February 23rd, 2006, to Ascertain the Proper Amount of a Protective Order Payments by Both Parties** .

Plaintiff requests that all parties be required to attend an evidentiary hearing on February 23rd, 2006 (date of Scheduling Conference) to determine the amount of that each party should pay into the Court Registry. Plaintiff agreed to pay $1,500 (more than the terms of the original agreement) even though Plaintiff is owed thousands of dollars in rent that should not have been paid, in addition to repair costs of the condominium of over $8,000. Plaintiff seeks an evidentiary hearing to introduce properly evidence of the amounts owed by Defendants.

                                                Respectfully submitted,

Dated January 27th, 2005

                                        Jonathan C. Dailey
                                        3 Bethesda Metro Center, Suite 530
                                        Bethesda, Maryland  20814
                                        (301) 718-1900
                                        *Pro se*