IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY, | : |
| Plaintiff, | : |
| v. | : |
| SUNGAH PARK, | : Case No.: 1:05-CV-02012 |
| and | : Judge Ricardo M. Urbina |
| AYAL FACTOR, | : |
| Defendants. | : |

**PLAINTIFF'S MOTION TO ENFORCE CLOSING OF PROPERTY UNDER SETTLEMENT AGREEMENT OR, IN THE ALTERNATIVE, TO DECLARE THE SETTLEMENT AGREEMENT VOID AND PROCEED WITH LITIGATION**

COMES NOW the Plaintiff, pro se, and moves this Honorable Court to enforce the closing of the property under the terms of the settlement agreement or, in the alternative, to declare it void and allow the parties to proceed with litigation. For the reasons set forth more fully in the attached Memorandum, Defendant breached the Settlement Agreement by failing to "deliver to [the Plaintiff] such additional documents as may be necessary or appropriate to consummate the transactions contemplated" therein. The Defendant failed to deliver the payoff document(s) in a timely fashion to allow Plaintiff to close on the property by or before April 27th, 2006.

Wherefore, for the reasons set forth in the attached Memorandum, the Plaintiff respectfully requests that this Honorable Court enforce the closing of the property under the settlement agreement or, in the alternative, to declare it void and allow the parties to proceed with litigation. Plaintiff further seeks an award of attorney fees and costs.

                                                           Respectfully submitted,

                                                           JONATHAN C. DAILEY, *pro se*

Dated: May 2, 2006                                        _____
                                                           3 Bethesda Metro Center, Suite 530
                                                           Bethesda, MD  20814
                                                           Washington, DC 20007
                                                           Telephone: (301) 718-1900

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY, | : |
| Plaintiff, | : |
| v. | : |
| SUNGAH PARK, | : Case No.: 1:05-CV-02012 |
| and | : Judge Ricardo M. Urbina |
| AYAL FACTOR, | : |
| Defendants. | : |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE CLOSING OF PROPERTY UNDER SETTLEMENT AGREEMENT OR, IN THE ALTERNATIVE, TO DECLARE THE SETTLEMENT AGREEMENT VOID AND PROCEED WITH LITIGATION**

The Plaintiff, Jonathan C. Dailey, pro se, has moved this Honorable Court to enforce the closing of the property under the settlement agreement or, in the alternative, to declare it void and allow the parties to proceed with litigation. In support of this Motion, the Plaintiff states as follows:

STATEMENT OF FACTS

On March 13, 2006, with the assistance of Magistrate Judge Kay, the parties mediated the underlying dispute in this case pertaining to a condominium located at 1080 Wisconsin Avenue, NW, Unit 2006, Washington, D.C. 20007 (hereinafter "the property").

Attached hereto as Exhibit 1 is the Declaration of Ms. Tabitha Fitzgerald. Ms. Fitzgerald served as Plaintiff's mortgage broker and has personal knowledge of the steps taken by Plaintiff to close on the property and the failure by Mr. Sadowski to provide the payoff document(s).

3

On the day following settlement, March 14, 2006, Plaintiff requested that Ms. Fitzgerald's company obtain financing for the purchase of the property. See Exhibit 1, ¶ 3.

On March 23, 2006, Ms. Fitzgerald was able to obtain a Loan Pre-Approval for Plaintiff. Id. See also, Exhibit 2. Plaintiff was also aware that even under his best financing scenario, he would be required to come to the closing table with approximately $75,000 in cash. So Plaintiff pursued dual tracks of securing the necessary financing while simultaneously securing the cash necessary to close.

In order for Plaintiff to secure financing, Ms. Fitzgerald required a ratified sales contract and payoff information for the loan(s) that were attached to the property in question. See Exhibit 1, ¶ 5.

On April 12th, 2006, via Federal Express, Ms. Fitzgerald forwarded a preliminary HUD-1 Settlement Statement and Deed for review and a Sales Contract for review and signature to Mr. Sadowski and Mrs. Park. See Exhibit 1, ¶ 6.

On April 14th, 2006 – a full thirteen (13) days prior to the final closing date of April 27th - Ms. Fitzgerald telephoned Mr. Sadowski to request information regarding the payoffs for the two mortgages attached to the property. Mr. Sadowski was unavailable and Ms. Fitzgerald left a voice mail message for him to return her call. Id. ¶ 7.

On April 14th, 2006, Plaintiff sent a letter by federal express requesting an explanation why neither Ms. Park nor Mr. Sadowski had responded to Plaintiff's attempts to secure a signed Sales Contract and making it clear that without their cooperation, Plaintiff would be simply unable to close. See Exhibit 3.

Three days later, Mr. Sadowski returned Ms. Fitzgerald's call on April 17, 2006, leaving a voice mail message for her indicating that rather than call, she should email him any requests

for information. Ms. Fitzgerald complied and e-mailed Mr. Sadowski and again, specifically requested the payoffs for the mortgages on the property, as well as, Mrs. Park's social security number, which the title company requested from her to run a judgment report on the seller.

Mr. Sadowski had expected – and received – a standard sales contract on April 13th, 2006. Rather than attach the Agreement to the sales contract (confidentiality could have been agreed to by all parties and the lender) and agree that the Agreement controlled the Sales Contract if a conflict existed, counsel wrote a letter dated April 17th, 2006, to Plaintiff asking for <u>thirty-two</u> changes to the contract. <u>See</u> Exhibit 4. Moreover, in the same letter, Mr. Sadowski arbitrarily dictated <u>new terms</u> not set forth in the Agreement. First, Mr. Sadowski wrote that since Ms. Park opted not to attend closing in person, she would need 48 hours in advance of closing to review documents. Second, Mr. Sadowski removed two full business days from the calendar by writing that his client would not review or sign any documents from sundown Tuesday, April 18, to sundown Thursday, April 20, 2006 due to passover. There is no way for Plaintiff to have known that Ms. Park was a strict observer of passover to the point that she would refuse to review or sign documents during business day. Nevertheless, Mr. Sadowski arbitrarily added this new term to the Agreement, as well. <u>Id</u>.

On April 17, 2006, Plaintiff contacted Ms. Fitzgerald to make the revisions to the Sales Contract as requested by Mr. Sadowski. On that same day, Ms. Fitzgerald then forwarded the revised Sales Contract to Mrs. Park and Mr. Sadowski via Federal Express for review and signature. <u>See</u> Exhibit 1, ¶ 9.

Plaintiff worked hand-in-hand with his mortgage broker making the second round of changes and getting the revised Sales Contract to counsel and his client by federal express. The revised Sales Contract was received on April 18th, 2006, however, Ms. Park refused to review it

5

and it was not until April 20th, 2006, that counsel responded with a letter setting forth an additional <u>ten</u> changes to the Sales Contract.  <u>See</u> Exhibit 8.

Plaintiff again scrambled his mortgage broker and reviewed the changes.  These changes were agreed to and the contract was modified.  However, Mr. Sadowski wrote in his April 20, 2006, correspondence that he did "not believe that [Plaintiff] complied with Section 16" of the Agreement which provided that documents needed to be provided to Ms. Park seven days prior o closing. <u>See</u> Exhibit 8, page 3.  Plaintiff was of the position that the only documents that could be provided seven days prior to closing were the Sales Contract, the Deed and the HUD.  Since it was Defendant's choice to modify these documents, the Defendants could have continued to make changes indefinitely and allege that the notice provision of the Agreement had not been violated.

Therefore, insofar as Mr. Sadowski had set forth in writing that he believed Plaintiff was in breach of the Agreement, it would have made no sense to continue the efforts of Plaintiff's mortgage broker, title representatives and title attorney when Defendant had concluded that Plaintiff was in breach.  Plaintiff had arranged for a conference call with Chambers to ascertain the next legal step, however, it was cancelled after Plaintiff received a correspondence from Mr. Sadowski dated April 21, 2006, which read "note that at this time the Defendants withdraw any claim that you did not timely send them appropriate documentation in compliance with the Settlement Agreement."  <u>See</u> Exhibit 6.  With that assurance, Plaintiff turned to the essential remaining piece of information – the World Savings payoff amounts for Ms. Park's first and second mortgage.

Since Mr. Sadowski had not responded substantively to Ms. Fitzgerald's April 14th voicemail request for payoff information, she sent an e-mail on April 17th again asking for the payoff amounts. See Exhibit 5.

On April 18, 2006, Ms. Fitzgerald received Mr. Sadowski's e-mail response to her request. Rather than simply provide the information to which his client had unique access, he wrote that she should contact World Savings for the payoffs and provided her with the loan numbers for Mrs. Park's first and second mortgages with World Savings Bank and the phone number for their Customer Service department. He refused to provide Ms. Fitzgerald with Mrs. Park's social security number as requested, stating that it was not ordinary practice to provide this information. That same day, Ms. Fitzgerald forwarded Mr. Sadowski's response to the title company to order the payoffs. See Exhibit 1, ¶ 10.

On April 20th, 2006, Ms. Fitzgerald contacted the title company to inquire about the status of the payoffs from World Savings Bank. The Title Agent (first name "Cassie") advised Ms. Fitzgerald that two days prior – on April 18th - she emailed Mr. Sadowski requesting information needed to obtain the payoffs from World Savings and she had not yet received any response from him. Id. ¶ 11.

Ms. Fitzgerald then contacted Plaintiff to inform him that the title company had not received a response to their request. Plaintiff then made a conference call to Mr. Sadowski with the Title Agent and Ms. Fitzgerald to expedite securing the information needed to obtain the payoffs. Mr. Sadowski acknowledged receipt of an email from "someone" requesting information for Mrs. Park's payoffs and he said that he had not responded to the email. Id.

Cassie told Mr. Sadowski that she needed Mrs. Park's social security number to order the payoffs from World Savings. Mr. Sadowski did not provide us with Mrs. Park's social security number during the conference call. Id.

The one piece of information that was in the exclusive province of Defendant Park was the payoff amounts. As early as April 17th, Mr. Sadowski was asked for the payoff amounts – he refused to provide them. Rather, he stalled the process by maintaining that any party could obtain the pay off information, which was true but not in time for the closing date of April 27th – of which Mr. Sadowski was well aware. On April 21st, Mr. Sadowski wrote that "pay off requests require ten business days to process"(see Exhibit 6) – it was obvious, therefore, that World Savings would not provide us with the payoff amounts any earlier than May 1st. Knowing this, Plaintiff wrote to Mr. Sadowski on April 21st that read: "The easiest way to get this pay off and to get it turned around the same day – is for Ms. Park simply to call World Savings and request that it be faxed to us." Each and every representative of World Savings that Plaintiff talked with personally stated over and over again that all Ms. Park had to do was call in and ask that for an expedited payoff, that it would be provided. Ms. Park refused to call in until it was too late.

On April 21st, Mr. Sadowski responded that he would have Ms. Park sign a request (which he knew would put the turn around time beyond the closing deadline), but that she would not make a phone call. Mr. Sadowski concluded: "The Defendants will NOT, however, do your closing work for you." See Exhibit 7. (Emphasis in original.)

Mr. Sadowski's actions regarding the refusal to provide the payoff information prompted Ms. Fitzgerald to state under oath: "In my ten year experience as a Mortgage Broker, I have

never witnessed such stall and delay tactics in providing basic payoff information by any seller." See Exhibit 1, ¶12.

Obviously, Plaintiff could not force Ms. Park to call World Savings. Left with no other options, Plaintiff complied again with Mr. Sadowski's insistence that Plaintiff prepare the written authorization – it was forwarded to counsel on April 21st. When Ms. Park signed it, she inexplicably dated it for "6/21/06" rather than the correct date of "4/21/06". This error was not caught by Plaintiff and the certification was sent; however, it was never acted upon and the release of the payoff information remained scheduled for May 1st, 2006. See Exhibit 9.

On April 26th, Mr. Sadowski requested the timing and location of settlement and asked to whom the documents should be sent. See Exhibit 10.

Plaintiff was cleared to close on April 27th, 2006, pending receipt of the payoffs from World Savings. See Exhibit 1, ¶ 13. The Court was then involved in the final attempt to receive the payoff information. Although the Court was able to convince World Savings to send the pay off information, the World Savings representative only sent the first pay off at 4:30 pm. A second call from Ms. Fitzgerald was necessary to secure the second payoff, which was received at 5:30 pm. The final settlement documents were provided at 6:02 pm on April 27th, with a revision sent at 6:15 pm. Id.

Rather than accept the wire transfer on April 28th, Mr. Sadowski wrote that "[Plaintiff] did not close by 6:00 pm" and demanded that he execute a Dismissal Order forfeiting all rights to the property.

ARGUMENT

Defendant Park breached the settlement agreement. Plaintiff was unable to comply with the closing deadline for one reason alone – Defendant failed to deliver "such additional

documents as may be necessary or appropriate to consummate the transactions contemplated herein…." See Agreement, ¶ 16. It was known by all parties that the payoff would be provided in written form – it was a <u>document</u>. It was requested on April 14th by voicemail and again in writing on April 17th. This document was delivered only after Court intervention on April 27th – the day of the closing deadline in the late afternoon. It was <u>impossible</u> for Plaintiff to close by the deadline without this document provided in a timely fashion. Defendant explicitly recognized in the Agreement that "the Parties agree that time is of the essence with respect to each party's obligations under the Agreement." Id. ¶17. The Defendant is in breach of the settlement agreement and for that reason, Plaintiff requests that the Court enforce the closing transaction and order that the property be sold by Defendant and purchased by Plaintiff pursuant to the terms of the settlement agreement (albeit with a revised closing date).

Any alleged breach by Plaintiff was not material to the Agreement and waived by the assurances given by Defendant's counsel to Plaintiff. Only material breaches of a settlement agreement justify rescinding the agreement. See *Thomas v. Department of Housing and Urban Dev., 124 F.3d 1439, 1442 (Fed. Cir. 1997)*. "Not every departure from the literal terms of a contract is sufficient to be deemed a material breach of a contract requirement . . . ." *Stone Forest Indus., Inc. v. United States, 973 F.2d 1548, 1550 (Fed. Cir. 1992)*. A material breach "relates to a matter of vital importance, or goes to the essence of the contract." *Thomas, 124 F.3d at 1442*. Materiality depends on "the nature and effect of the violation in light of how the particular contract is viewed, bargained for, entered into, and performed by the parties." *Stone Forest, 973 F.2d at 1551*. In this case, Mr. Sadowski has peppered his e-mail messages to Plaintiff with allegations that the loan process was started too late (even though Plaintiff has now shown it was started the day after settlement occurred) and that Plaintiff did not deliver the documents seven

10

business days prior to closing.  First, Plaintiff did in fact deliver the critical closing documents seven days prior to closing – the Deed, HUD and Sales Contract were delivered well before seven business days prior to closing.  If Defendant now alleges that he did not receive them "finalized" until 6:15 pm on April 27th, it was only because the Defendant breached the Agreement by failing to provide the payoff document in a timely fashion.  And even if the two District of Columbia housing authority documents were not provided seven business days in advance, it is obvious that the Agreement contemplated the "Sales Agreement" (even the Deed and HUD were not contemplated by the Agreement – although they were provided seven days in advance – since they cannot be finalized until the actual day of closing). No action by Plaintiff materially breached the terms of the Agreement.

    Despite the fact that the Defendant materially breached the Agreement by failing to provide the payoff document(s) in a timely fashion, any alleged breach of the Agreement by Plaintiff was not a "matter of vital importance" or the "essence" of the contract.  Sale transactions on any property are peculiar to the facts and circumstances of each transaction.  No agreement could contemplate each and every nuance of the closing process – and the Agreement at issue did not, as well.  Plaintiff not only substantially complied with the Agreement, but arguably exceeded its provisions by taking matters into his own hand when Defendant failed to provide the payoff documentation.  Plaintiff did everything in his power to assist the Defendant in securing this document – despite Defendant's contractual obligation to secure the document.

    The record in this case makes clear that Plaintiff took every step possible to close on the property.  Defendant and her counsel did not comply with the requirements of providing documents "necessary or appropriate to consummate the transaction" and did not provide the payoff document in a timely fashion.  The remedy is for the Court to enforce the "vital" term of

the Agreement and order the property sold pursuant to the Agreement's terms. Any breach alleged by Defendant was not material to the contract and only provided the Defendant with a "last ditch" effort to abandon the Agreement and retain the property. When the Court examines the facts of this case, it cannot be overlooked that it was in the Defendants' interest to abandon the Agreement and allege a breach. They have everything to gain – they retain the property valued far higher than is owed on the property and they end litigation that could result in a verdict favorable to Plaintiff. Even a non-interested party – Ms. Fitzgerald – stated under oath that in ten years, she had never seen the employment of the stall tactics exhibited by Defendant and her counsel in this case when it came to providing the payoffs – a document they were contractually obligated to provide.

In the alternative to forcing the sale of the property pursuant to the terms of the Agreement, Plaintiff requests that the Court declare the Agreement void based upon Defendant's breach of the Agreement. Such an Order, while not preferable to forcing the sale of the property under the original Agreement, will allow Plaintiff to continue his pursuit of a just result in this case.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court to enforce the closing of the property under the settlement agreement or, in the alternative, to declare it void and allow the parties to proceed with litigation. Plaintiff further seeks an award of attorney fees and costs.

                                        Respectfully submitted,

                                        JONATHAN C. DAILEY, *pro se*

Dated: May 2, 2006                                        _____,
                                        3 Bethesda Metro Center, Suite 530
                                        Bethesda, MD  20814
                                        Washington, DC 20007
                                        Telephone: (301) 718-1900

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY,<br><br>    Plaintiff,<br><br>v.<br><br>SUNGAH PARK,<br><br>and<br><br>AYAL FACTOR,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:   Case No.: 1:05-CV-02012<br>:   Judge Ricardo M. Urbina<br>:<br>:<br>:<br>:<br>: |

**<u>ORDER</u>**

UPON CONSIDERATION of Plaintiff's Motion to enforce the closing of the property under the settlement agreement or, in the alternative, to declare it void and allow the parties to proceed with litigation ("Motion"), the Defendant's Opposition and the entire record herein, it is on this ____ day of May, 2006, hereby

ORDERED, that Plaintiff's Motion be and hereby is GRANTED; and it is further

ORDERED, that the closing on the property contemplated by the Agreement occur under the terms of the Agreement, with the exception that the closing occur by or before _____, 2006.

SO ORDERED.

_____
Judge Ricardo M. Urbina

14