# EXHIBIT B

LAW OFFICES

GREENSTEIN DELORME & LUCHS, P.C.

1620 L STREET, N.W., SUITE 900

WASHINGTON, D.C. 20036-5605

TELEPHONE (202) 452-1400

FACSIMILE (202) 452-1410

www.gdllaw.com

WILLIAM H. HARRIS, JR.
RICHARD G. WISE
ABRAHAM J. GREENSTEIN
GILBERT E. DELORME
VINCENT MARK J. POLICY
RICHARD W. LUCHS
JUDITH R. GOLDMAN
JACQUES B. DEPUY
JEFFREY H. GELMAN
ALAN S. WEITZ
WILLIAM C. CASANO
JOHN PATRICK BROWN, JR.
LEWIS F. MORSE
ROGER D. LUCHS
JAMES D. SADOWSKI

STEPHANIE A. BALDWIN
LYLE M. BLANCHARD
GREGORY T. DUMONT
ALFRED M. GOLDBERG
JOSHUA M. GREENBERG
MONIC Y. HALSEY
DONALD F. HOLMES, JR.
GUY R. JEFFRESS
M. RYAN JENNESS
MIRIAM HELLEN JONES
ISABEL P. SABIO*

OF COUNSEL
MICHAEL T. CREHAN

*ADMITTED IN VA ONLY

JDS@GDLLAW.COM

March 13, 2006

~~February 15, 2006~~

MEMORIALIZATION OF ~~FOR~~ SETTLEMENT ~~PURPOSES ONLY~~ AGREEMENT REACHED AT MEDIATION

***VIA E-MAIL ONLY***

Jonathan C. Dailey, Esq.
Caplan, Buckner, Kostecka & Korteling, Chtd.
3 Bethesda Metro Center
Suite 530
Bethesda, MD 20814

Re: Jonathan C. Dailey v. Sungah Park, et al.
Case No: 1:05-CV-2012 (Dist. Ct. D.C.)

Dear Jonathan:

This letter written in a response to our recent e-mail exchanges regarding a settlement of this dispute. While I understand that you have strong personal feelings about paying the Defendants anything for what you feel is "your" property, and that the fire at the Property had adverse affects on your personal and professional life, please allow me to explain some things from the Defendants' point of view, which will hopefully put the settlement proposal at the end of this letter in perspective.

Even though you have not asked for it, please accept the apologies of the Defendants for whatever inconvenience was caused by the fire. Although from a legal standpoint I do not believe the Defendants can be held responsible for the fire, it was an experience that I now understand did cause you great difficulty. Please also keep in mind that, from our perspective,

there is nothing wrong in what the Defendants have done. They had rights under the Repurchase Option Contract ("Contract"), which was not merely a gentleman's agreement. I have reviewed the extensive e-mail traffic between you and Mr. Factor. You wrote to him several times (and I am paraphrasing), that the Contract remained in full force and that by accepting your late payments, Ms. Park would not be waiving any rights. The exact words you used were something like "the contract stands as written." So from a contracts point of view, which is an area of law that falls within my area of litigation expertise, your contract-based claims are dead in the water. One also cannot commit a conspiracy (or engage in other wrongful conduct) by asserting rights under a contract. The Defendants did hire lawyers, not as part of a scheme to defraud you, but because they had rights under the Contract and, as non-lawyers, they were not on equal footing with you, an experienced trial lawyer.

In recent e-mails you expressed your view that the Defendants have "not gone down" from their number while you have "gone up." That position also has to be placed in the proper context. I did not initiate the settlement negotiations in the hopes that you would cut the Defendant's proposal in half, nor did I assume that by "meeting halfway" or "splitting the difference" that a deal could be struck. The proposal that I first sent to you was based almost entirely upon my assessment of the projected outcome (Defendant Park retaining ownership), the risk that that outcome may not be realized, and the expense associated with achieving that outcome – recognizing that, as time has proven, that you would be a formidable adversary. Those factors were all included in the settlement mix. Also included in the settlement mix was that with Judge Urbina we have a judge that, in my experience and the extensive experience of others in this firm, will make "no-nonsense" decisions that are favorable to the Defendants' position. I also believe that, if this matter were to go to trial, that a jury will hold you to a high standard of conduct. Lawyers, in my opinion, are generally not sympathetic plaintiffs. Finally, I tried to include in the settlement mix a sense of fairness. That variable of the settlement calculus included an estimate of the current value of the property, which, while to some extent quantifiable, is still somewhat of an unknown.

.5 To now cut to the chase, the ~~Defendants are willing to~~ parties have settled this matter by allowing ~~you~~ Mr. Dailey to purchase the property back from them for ~~$360,000~~ $347,000. The parties will sign a written Settlement Agreement and Mutual Release ("Settlement Agreement"), which I will prepare, that will include the following terms:

1. The release will be a blanket, mutual release of all claims, known or unknown (excluding performance obligations under the Settlement Agreement); and

2. Closing must occur prior to ~~March 25~~ April 27 at 6:00 pm, 2006; and

3. ~~You~~ Mr. Dailey will make a representation and warranty stating that, other then the Minkoff lien and the unpaid cleaning costs, ~~you are~~ he is not aware of any other claims related to the Property; and

Mr. Dailey is responsible for all closing costs. [initials]

¶ 5. Defendants represent and warrant that they have not encubered the Property other than by the first mortgage with World Savin and the line of credit.

4. ~~You~~ Mr. Dailey will be responsible for paying all mechanic's liens and any other liens on the Property prior to closing. The title company may withhold from the closing proceeds an amount sufficient to pay any unsatisfied liens or other debts related to the Property; and

5. ~~You~~ Defendants will ~~not~~ be responsible for any costs associated with paying the second mortgage (a line of credit) that was taken out by the Defendants. The Defendants may pay that obligation out of the proceeds of closing; and

6. The Settlement Agreement will include a confidentiality provision and a mutual non-disparagement provision; and

~~7. The parties will each share in the costs of the preparation of an appraisal by a neutral appraiser. The appraisal will be conducted as soon as possible after this letter is signed. If the appraisal sets the value of the property above $475,000, the purchase price will be increased by one-half of every dollar above $475,000, up to a maximum of a $25,000 increase in the purchase price; and~~

8. The Settlement Agreement will include basic boiler-plate provisions such as further assurances, merger/integration, opportunity to review by counsel, not construed against any one party, choice of law (D.C.), prevailing party recovers attorney's fees if there is a breach, etc.; and

9. Contemporaneous with the signing of the Settlement Agreement, the parties (or me as counsel) will sign a Stipulation of Dismissal with prejudice, which I will be authorized to file five (5) calendar days after the closing date; and if Mr. Dailey completes closing on April 27, 2006

~~10. If you have not done so already, you will make the protective order payments for Dec. 2005 – Feb. 2006 by February 20, 2006 and the March 6, 2006/April 6, 2006 payment on that date and those amounts ($6,000) will be released to Defendants after closing – this to cover the actually carrying costs for this month and through the date of closing; and~~

11. If you are unable to ~~either~~ complete closing by 6:00 pm on April 27, 2006 ~~or to make the protective order payments~~ for any reason ~~other than a force majeure (disaster, terrorist incident, act of god)~~ you will forever forfeit any right to repurchase the Property and your claims in the litigation will all be dismissed with prejudice. The Defendants will also be entitled to the immediate entry of a non-redeemable judgment for possession against ~~you, which~~ Mr. Dailey for the Property they may execute immediately without any right of appeal or redemption. Judge Urbina (not a jury) will retain jurisdiction to enforce the Settlement Agreement and to decide the validity of any claim ~~that you make concerning a delay caused by a force majeure~~ regarding compliance with the Settlement Agreement; and

[initials]

12. The existing Protective Order will remain in ~~place during any dispute over compliance with the Settlement Agreement, will be increased to $3,000 per month effective April 5, 2006, and, no matter what the outcome is on any dispute over compliance with the Settlement Agreement,~~ all funds in the court Registry will be released to the Defendants; and

[handwritten insertions: "funds" / "the Court Registry"]

13. The parties will submit the Settlement Agreement to Judge Urbina for approval ~~at the Scheduling Conference~~.; and

If the terms of this proposal are acceptable to you, please so indicate by signing in the space provided below. Upon receipt of the signature page, or of an e-mail from you confirming that you have accepted this proposal (to be followed later by sending me a signed signature page), I will notify Judge Urbina's chambers that the matter has been settled and will begin preparing the Settlement Agreement.

I look forward to your prompt response and thank you again for providing the framework for an amicable resolution of this matter.

Very truly yours,

[signature]

James D. Sadowski

him.

AGREED AND ACCEPTED:

[signature]

Jonathan C. Dailey

Date: ______________

282659v1

cc: Mr. Ayal Factor (by e-mail)
Ms. Sungah Park
Judith R. Goldman, Esq.
Richard W. Luchs, Esq.

If Mr. Dailey is able to complete closing by 6:00 pm on April 27, 2006

If Mr. Dailey is not able to complete closing by April 27, 2006 at 6:00 pm (for any reason) all funds in the Court Registry will be released to Defendants.

[initials]

14. Mr. Dailey [(or tenant of Dailey)] agrees to indemnify and hold harmless the Defendants from and against any and all claims [(including reasonable attorneys' fees and costs)] that any existing subtenant may assert under the Tenant Opportunity to Purchase Act.

15. The dismissal of all claims with prejudice will occur whether or not Mr. Dailey is able to complete closing on April 27, 2006 at 6:00 pm [except as to Defendants' claim for possession.]

Jonathan C. Dailey

Sung Ah Park

Ayal Factor