IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN C. DAILEY,

    *Plaintiff,*

v.

SUNGAH PARK, et al.,

    *Defendants.*

Case No.: 1:05-CV-02012
Judge Ricardo M. Urbina

## DEFENDANTS' REBUTTAL MEMORANDUM TO REPLY FILED BY PLAINTIFF

COME NOW THE DEFENDANTS, Sungah Park and Ayal Factor, by counsel, and hereby file their Rebuttal Memorandum to the Reply filed by the Plaintiff, Jonathan C. Dailey ("Mr. Dailey"). In support of their Rebuttal Memorandum, the Defendants state as follows:

A.    <u>The Defendants Were Not Obligated to Obtain the World Savings Payoff Statement</u>

In his Reply, Mr. Dailey continues to argue that Section 16 of the Settlement Agreement obligated the Defendants to obtain a World Savings payoff statement. As Defendants correctly pointed out in their Opposition, World Savings does not require that the customer "execute and deliver" anything in order to obtain a payoff statement. Information on how to obtain the payoff statement is readily available, both via an "800" number and via World Savings' web site. <u>See</u> Exhibit A. There is also no language conflict to reconcile between Section 16's "execute and deliver" requirement and Mr. Dailey's sole obligation to obtain all of the documents needed for closing. Defendants executed and delivered to Mr. Dailey every document that they were asked to sign and often did so in an extremely short time frame – this despite the fact that Mr. Dailey

did not comply with the seven business day advanced notice requirement.[1] Mr. Dailey did not seek to obtain the payoff statement from World Savings sufficiently in advance of the closing date and lays blame for his failure on everyone else.

B.  Defendants' Counsel Has Not Engaged In "Character Assassination," But Has Instead Demonstrated That Mr. Dailey Has Unclean Hands

Mr. Dailey asserts that Defendants' counsel "devotes most of his opposition to a scathing character attack on Plaintiff or inappropriate comments on the underlying dispute." Reply at 2. Mr. Dailey has come before the Court seeking equitable relief in that he asks the Court to both disregard his failure to comply with the Settlement Agreement and to rewrite the terms of the Settlement Agreement to provide him with a closing extension. It is entirely appropriate for the Defendants to remind the Court that, when it comes to compliance with written agreements, Mr. Dailey does not stand before this Court with clean hands. Mr. Dailey has demonstrated, over and over again, neglect and an inability to comply with written agreements and court orders. While those are without question unpleasant facts, Defendants' counsel did not create those unpleasant facts, Mr. Dailey did, and those facts are relevant to the compliance issues that are now under discussion.[2] Moreover, in Mr. Dailey's prequalification application for the loan he has applied for, it indicates that there will be "6% Seller help." See Motion to Enforce,

---

[1] On April 27, 2006, up until 6:00 p.m., Defendants' counsel was standing by ready to deliver the original Deed and Addendum to HUD-1. Those were the only two original documents that were not delivered to Mr. Dailey as Mr. Sandler instructed Defendants' counsel to hold on to them. See Exhibit B.

[2] An example of Mr. Dailey's inappropriate settlement conduct is set forth in Exhibit C. Exhibit C consists of four e-mail messages from Mr. Dailey to Defendants' counsel on April 11, 2006. In the first message, Mr. Dailey initially threatens Defendants' counsel based upon his incorrect interpretation of the Settlement Agreement's notice provision. In the second message, sent minutes later, Mr. Dailey threatens to file a protective order "based upon frivolous claims of proper notice." In the third message, Mr. Dailey acknowledges that he has misread the Settlement Agreement's notice provision, which requires delivery of all the sales documents by FedEx. In the fourth message, Mr. Dailey admits that he does not have a copy of the Settlement Agreement and that his mortgage broker "advised me that I am required to send the sales agreement by overnight mail."

2

Exhibit 2, (third check box from the bottom). That notation is not consistent with the Settlement Agreement. Similarly, in the Regional Sales Contract, Mr. Dailey represents that he will be occupying the Property as his principle residence. See Exhibit D (Section 10, first sentence, "will" box checked by Mr. Dailey). That seems implausible, given that Mr. Dailey now lives in Colorado and there is a subtenant in the Property on a one year lease. The evidence of Mr. Dailey's unclean hands in this matter is significant.

C.  Mr. Dailey Has Conceded That He Has Breached the Settlement Agreement – on Multiple Fronts

In his Reply, Mr. Dailey submits an additional declaration from Ms. Fitzgerald ("Second Declaration"). The Second Declaration, like the First Declaration submitted by Ms. Fitzgerald, is littered with inadmissible hearsay. Be that as it may, Ms. Fitzgerald openly admits that she did not know what documents comprised all of the documents that the Defendants had to sign at closing. Defendants do not intend to imply that Ms. Fitzgerald intentionally misled Mr. Dailey and Defendants' counsel during a conference call when she stated that only two documents were needed at closing – the Deed and the HUD-1. That is not the point. The point is that whether Ms. Fitzgerald said "only two documents are needed" or instead said "<u>to my knowledge</u> these were the only documents [deed and HUD-1] needed at closing,"[3] Ms. Fitzgerald either <u>did not know</u> what was needed or <u>was wrong</u> about all of the documents that had to be signed at closing. Ms. Fitzgerald concedes this fact and by doing so adds further support to Defendants' position regarding the closing errors committed by Mr. Dailey. Mr. Dailey did not provide to Defendants all of the documents that had to be signed at closing at least seven business

---

[3] "To my knowledge" sounds like something a lawyer, not a layperson, would say.

days in advance of the closing date. Mr. Dailey's own mortgage broker admits that she did not know what Mr. Dailey needed. There is no escaping this fact. It was Mr. Dailey's responsibility under the Settlement Agreement to get his closing house in order sufficiently in advance of the closing date.[4] That Mr. Dailey chose to delegate his responsibility under the Settlement Agreement to others does not relieve him of that responsibility. Mr. Dailey likewise does not deny the fact that he breached the Settlement Agreement's confidentiality provision by providing a copy to his mortgage broker – a breach that occurred well in advance of any performance obligations of the Defendants. The confidentiality provision of the Settlement Agreement is a provision that is material on its face and Mr. Dailey disregarded it.[5]

D.   Defendants Did Not Change the Terms of the Settlement Agreement

In his Reply, Mr. Dailey asserts that Defendants "unilaterally changed the terms of the Agreement" by "demanding 48 hours advance time" and "removing two full calendar days" for "unknown religious reasons." Reply at 4. These arguments, like many others advanced by Mr. Dailey, make no sense. First, Mr. Dailey should not complain that Defendants' counsel, as a matter of professional courtesy, notified him in advance that the Defendants would not be available to sign documents during the second half of Passover. Second, Mr. Dailey has not demonstrated that the Defendants'

---

[4]   The web site for Ms. Fitzgerald's company, I-Want-A-Low-Rate.com, lists the "Top Ten Mistakes" for buying a home, one of which is "Not Allowing for Delays in Transactions." http://iwantalowrate.com/topTen.html#Buying. Mr. Dailey clearly did not heed that advice.

[5]   The confidentiality provision states: "The Parties agree that the confidentiality of this Agreement is an important consideration for their entering into this Agreement." See Settlement Agreement at 6, Section 19 (underlined emphasis added). "Important" means: "marked by or indicative of significant worth or consequence: valuable in content or relationship." Merriam-Webster's online dictionary. Synonyms for "important" are "crucial," "vital," "key," and "essential." Mr. Dailey breached the confidentiality provision, a material provision of the Settlement Agreement, even before any documents were sent to Ms. Park.

4

unavailability during this time frame had any impact whatsoever on the transaction. Third, the Defendants were entitled to at least "seven business days" advanced notice before they had to sign any closing documents, not just 48 hours. So even if the "48 hours" advanced lead time request could be construed to be a modification -- and it cannot because Mr. Dailey himself claims that that modification was a "breach" and that he did not accept that modification -- that modification would have inured to Mr. Dailey's benefit as it would have <u>reduced</u> the advanced notice requirement by several days.

E.    Mr. Sandler's Affidavit Is Irrelevant

Neither Mr. Sandler nor Ms. Fitzgerald may change the terms of the Settlement Agreement by filing Affidavits and Declarations. Remarkably, Mr. Dailey continues to assert, this time through Mr. Sandler, that Ms. Park's social security number was required in order to obtain the payoff statements. Mr. Sandler is wrong. As the Court may recall from its own call to World Savings' customer service number, and as Defendants pointed out in their Opposition, World Savings does not require a phone call to obtain a payoff statement. World Savings also does not require that a third-party to provide a social security number in order to obtain a payoff statement. All that World Savings requires is the name of the customer, the address, the loan number, the closing date, and to whom the request should be sent. See Defendant's Opposition at 9 (listing World Savings' third-party payoff requirements verbatim).[6] Mr. Dailey's argument regarding the need for Mr. Park's social security is also effectively dispatched by Mr. Dailey's admission, in

---

[6] Mr. Sandler does not work for World Savings. There is no factual support in his Affidavit to back up his claim that the Borrower Certification signed by Ms. Park was considered "void" by World Savings.

5

writing, that Ms. Park's social security number was not required. See Exhibit E (this Exhibit is the same as part of Plaintiff's Exhibit 7, J. Dailey e-mail to J. Sadowski of 4/21/06 at 1:10 p.m. ("we don't need [Ms. Park's] social.").

With respect to both Ms. Fitzgerald and Mr. Sandler, Defendants' counsel has e-mailed and called Mr. Sandler and Ms. Fitzgerald to discuss their sworn statements. Neither Ms. Fitzgerald nor Mr. Sandler has responded to those inquiries. Ms. Fitzgerald and Mr. Sandler are not disinterested witnesses. It is to Ms. Fitzgerald's and to Mr. Sandler's advantage to blame their flurry of closing mistakes and lack of coordination on an alleged "lack of cooperation" by Defendants' counsel in order to avoid Mr. Dailey pursuing a claim against them. The Defendants have also not been given an opportunity to cross-examine Ms. Fitzgerald or Mr. Sandler regarding their statements, and Defendants reserve their right to do so before those statements are accepted as evidence. Of course, it is the Defendants' position that the Court need not make any credibility determinations with respect to Ms. Fitzgerald's and Mr. Sandler's statements because Mr. Dailey's submissions and the Settlement Agreement on its face patently demonstrate Mr. Dailey's breaches of the Settlement Agreement. The Court has ample record evidence before it, including Mr. Dailey's own admissions, to deny Mr. Dailey's motion without the need for a hearing or live testimony.

F.   The "Borrower Certification" Issue is Another Red Herring

Mr. Dailey has failed to produce any evidence that a "borrower's certification" must be provided in order to obtain a payoff statement from World Savings. Mr. Dailey is likewise mistaken concerning his allegation, for which no admissible evidence has been presented, that a misdating of the Borrower's Certification (if that occurred) caused

World Savings to reject it. These arguments, aside from not being true, are "red herrings." The information needed to obtain a World Savings payoff statement is set forth in Defendants' Opposition. The Court may also recall from the conference call on April 27, 2006 that a World Savings' representative acknowledged that the processing of the payoff statement was confirmed and already underway. At no time during that call did the World Savings' representative indicate that there was any defect in the Borrower's Certification that made it "void."

## CONCLUSION

Mr. Dailey ran out of time because of his own mistakes. Neither Defendants nor their counsel were under an obligation to perform Mr. Dailey's closing obligations for him under the Settlement Agreement. The consequences for Mr. Dailey's failure to perform his obligations are clearly spelled out in the Settlement Agreement, and this Court must now enforce its terms. Mr. Dailey's breaches are clear, are numerous, are substantial, and go to the essence of the parties' bargain. The Defendants are now entitled to receive the remedy that they bargained for in the Settlement Agreement.

WHEREFORE, for these reasons, and for any reasons that may be advanced at a hearing on this matter, the Defendants request that the Court:

(a) determine that Mr. Dailey has failed to strictly comply with the terms of the Settlement Agreement and that Mr. Dailey has breached the Settlement Agreement;

(b) enforce Section 2 of the Settlement Agreement, which states that Mr. Dailey has forever forfeited any right that he had to purchase the Property from Ms. Park under the Contract, under the Settlement Agreement, or otherwise

(c) enter an Order dismissing all claims in the Litigation with prejudice, except as to Ms. Park's claim for possession; and

(d) enter a non-redeemable judgment for possession against Mr. Dailey, which judgment Defendants may execute immediately upon without any right of appeal or redemption by Mr. Dailey; and

(e) enter and order releasing the funds being held in the Court Registry to Defendants; and

(f) enter an award of attorney's fees and costs.[7]

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

_____
James D. Sadowski, No. 446635
1620 L Street, N.W. - Suite 900
Washington, D.C. 20036-5605
(202) 452-1400
*Counsel for Defendants*

---

[7] If the Court determines that Mr. Dailey has breached the Settlement Agreement and Defendants are the prevailing party on this issue, Defendants' counsel will submit an appropriate application for attorney's fees and costs as ordered by the Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Defendants' Rebuttal Memorandum to Reply Filed By Plaintiff was filed electronically with the Court this 12 th day of May, 2006 (hard copy to Chambers), and sent by first class mail and electronic mail (as indicated) to the following person(s)

> Jonathan C. Dailey
> 3 Bethesda Metro Center
> Suite 530
> Bethesda, MD 20814
> *Pro Se Plaintiff*
> *Jonathan@ClearCreekPartners.com*
>
> Jonathan C. Dailey
> 1610 Little Raven Street
> Unit 410
> Denver, CO 80212
> *Pro Se Plaintiff*

_____
James D. Sadowski

289065v1