IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY,<br><br>*Plaintiff*,<br><br>v.<br><br>SUNGAH PARK, et al.,<br><br>*Defendants*. | Case No.: 1:05-CV-02012<br>Judge Ricardo M. Urbina |

### DEFENDANTS' BRIEF REGARDING
### JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT

COME NOW THE DEFENDANTS, Sungah Park and Ayal Factor, by counsel, and hereby file their Brief regarding the Court's jurisdiction to hear and decide the parties' respective Motions to Enforce the Settlement Agreement. In support of their Brief, the Defendants state as follows:

A.   <u>The Court is Mistaken Concerning the Submission of the Settlement Agreement for Approval and With Respect to Ratification of the Settlement Agreement by the Court.</u>

In its Order of May 18, 2006 ("Order"), the Court indicates that "the settlement agreement in this case required the parties to submit the terms of the settlement agreement to Judge Urbina for approval . . ." Order at 2 (first full paragraph) (quoting Section 14 of the Settlement Agreement). The Order further indicates that "[d]espite this language, the parties did not submit the settlement agreement to the court for approval and, <u>for this reason, the court did not ratify or adopt the parties' settlement agreement.</u>" Id. (emphasis added).

The Court is mistaken on several fronts. First, the parties did submit a Consent Motion to Approve Settlement Agreement Under Seal to the Court for Approval on April 18, 2006.[1] The Consent Motion was submitted under seal by Defendants' counsel as the Settlement Agreement contained a confidentiality provision.[2] Second, the Court's Order states that the Court "did not ratify or adopt the parties settlement agreement." The Court is again mistaken. While it is true that, to Defendants' counsel's knowledge, no formal order was issued by the Court approving the Settlement Agreement, the Court did ratify and adopt the Settlement Agreement on two separate occasions. On April 27, 2006, the Court initiated a conference call with World Savings, Plaintiff and Defendants' counsel. During that call, the Court indicated that it was conducting the conference call to World Savings in accordance with the section of the settlement agreement (i.e., Section 14) that provides that the Court would arbitrate disputes under the Settlement Agreement. During that telephone conference call, the Court also referenced the "forfeiture" provisions of the Settlement Agreement and the 6:00 p.m. deadline for closing.[3] More importantly, the next day after Mr. Dailey failed to close by the deadline in the Settlement Agreement, the Court's law clerk, during a conference call with Defendants' counsel and Mr. Dailey, dictated the following message that he said he had just received directly from the Court:

> The best efforts to resolve this matter informally both through the
> use of the Magistrate Judge and <u>the Judge's direct intervention in a
> fashion contemplated by the agreement</u>, seem to have failed. If a

---

[1] Defendants note that the validity of the Settlement Agreement was not conditioned upon court approval.

[2] Defendants counsel initially requested, via a voicemail message to Mr. Dan Rosenthal, the Court's law clerk, that the approval of the Settlement Agreement take place at a hearing scheduled for that purpose. Mr. Rosenthal indicated, however, that the Court's preference was to handle such a request by way of written motion. The parties then complied with the Court's request.

[3] By calling World Savings and putting the pressure, prestige and persuasive powers of a federal judge on World Savings, one looking from the outside might conclude that the Court was not umpiring a dispute, but instead swinging the bat at a pitch and actually attempting to assist the Plaintiff with the performance of his closing obligations under the Settlement Agreement.

2

>controversy has arisen as a result of the Settlement Agreement, the parties should reduce their positions to writing.

By these actions, the Court has already, both implicitly and explicitly, adopted and ratified the Settlement Agreement. It is therefore entirely inconsistent for the Court to now claim that it has not already ratified and adopted the Settlement Agreement. Defendants hope that the inclusion of any text in the Order indicating a contrary position was simply a mistake.

B.   As This Case is Still Pending and No Final Dismissal Order has Been Entered, the Court Has Jurisdiction to Enforce the Settlement Agreement

The Court asked the parties to brief the issue of jurisdiction in light of the following cases: Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994), Foretich v. Am. Broadcasting Cos., Inc., 198 F. 3d 270 (D.C. Cir. 1999), and Autera v. Robinson, 419 F.2d 1197 (D.C. Cir. 1969). Order at 2. Two of those three cases (Kokkonen and Foretich) are readily distinguishable and the third (Autera) supports Defendants' position.

First, two of the cases the Court referenced involved disputes in which the trial court had already issued an appealable order disposing of the claims. See Foretich, 198 F.3d at 272 (summary judgment entered on all counts); Kokkonen, 511 U.S. at 376-77 (parties executed a stipulation and order of dismissal with prejudice pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, which the District Judge signed and entered). Moreover, unlike this case, the settlement agreement in Kokkonen did not reserve jurisdiction in the District Court to enforce the agreement. No final order has been issued in this case and the Settlement Agreement explicitly reserves jurisdiction for this Court to enforce its terms.

Second, in neither Kokkonen, Foretich, nor Autera did the District Court already adopt or ratify a settlement agreement that explicitly reserved the Court's jurisdiction to enforce the terms of the settlement agreement -- as is the case here. Third, this case does involve the Court's

3

enforcement and oversight of its docket, as the Settlement Agreement provides that the case will not be dismissed unless one of two alternative stipulations of dismissal has been filed. See infra, Part C. That has not occurred.

Fourth, the filing of the stipulation of dismissal in this case has not occurred and that filing is not sole consideration for the Settlement Agreement – a cause for concern in Kokkonen. See Kokkonen, 511 U.S. at 395-96 ("Neither the [stipulation of dismissal] Rule nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation."). The Settlement Agreement in this case contemplates a transfer of property, an exchange of funds, a release, and, as additional consideration, the filing of a stipulation of dismissal of all or certain claims depending upon the degree of compliance by the Plaintiff.

Fifth, this matter is still pending before the Court. Depending upon the degree of compliance by the Plaintiff, the Settlement Agreement contemplates continuing action by the Court, such as the filing of a stipulation, release of the Court Registry funds to either Plaintiff or to Defendants, and the entry of a judgment for possession in favor of Defendants. Unlike in Foretich and Kokkenen, the merits of the claims in this case, until they are dismissed, are still pending before the Court and, as a result, there is no problematic issue concerning this Court's ongoing jurisdiction. See Autera, 419 F.2d 1197, 1200 (1969) ("It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it.) (underlined emphasis added and internal citations and footnotes omitted).

C.  The *Kokkonen* Exception Applies and this Court has an Independent Basis for Jurisdiction

*Kokkonen* expressly recognized that if a motion to enforce the settlement agreement is connected to the dismissed action, the exercise of ancillary jurisdiction by the Court may be appropriate. *Kokkonen*, 511 U.S. at 396-97 (recognizing that a federal court's jurisdiction over some matters are incidental to other matters properly before it). Defendants submit that the *Kokkonen* exception applies as the Settlement Agreement at issue in this case involves issues that are more than "incidental" to matters already before the Court. The merits of this action involved a sales contract, a dispute under a repurchase option contract, and a dispute over who will retain ownership of certain real property. The Settlement Agreement is similar in that it involves the same property, the same parties, and who will retain ownership of that property. Enforcement of the Settlement Agreement also affects the outcome of the litigation and how the case will proceed further, such as which stipulation of dismissal will be filed and which party will obtain a release of Court Registry funds. In addition, on March 10, 2006, the Court issued a show cause order to the Plaintiff, which show cause order was stayed (but not vacated) when the case was first referred to Judge Kay for mediation. Thus, there are a number of issues pending before the Court, so it would not be error for this court, even if *Kokkonen* applied, to exercise ancillary jurisdiction over the dispute under the Settlement Agreement in order to "manage its proceedings."

In any event, even if this case were governed by the holding in *Kokkonen*, this Court would have independent jurisdiction to hear the dispute under the Settlement Agreement if a breach of contract action was filed separately with this Court by either party. There is complete diversity among adverse parties to the Settlement Agreement and the amount in controversy

5

under the Settlement Agreement exceeds $75,000.[4] Accordingly, it follows that even if Kokkonen applied, either Plaintiff or Defendants could meet the burden of establishing federal court jurisdiction over a dispute under the Settlement Agreement.

D. <u>This Court, As a Matter of Judicial Economy, Is In the Best Position to Adjudicate a Dispute Under the Settlement Agreement.</u>

As a matter of judicial economy, this Court is in the best position to adjudicate a dispute under the Settlement Agreement in a prompt and expeditious fashion. This Court is already familiar with some of the facts surrounding the Settlement Agreement and with Plaintiff's conduct through both the Court's issuance of orders in this case and the Court's active participation in the conference call to World Savings. The issues involved in the two pending motions to enforce are straightforward as a written Settlement Agreement exists, its terms are plain and unambiguous, and there is no dispute as to the validity of the agreement itself. See Autera, 419 F. 2d at 1200 (a summary procedure for enforcement of a settlement agreement is admirably suited to situations where, for example, a binding settlement bargain is conceded or shown, and the excuse for non-performance is comparatively unsubstantial.").

## CONCLUSION

The Settlement Agreement was presented to the Court for approval and the Court has already ratified it by words and by conduct. Accordingly, as the Court has jurisdiction to enforce Settlement Agreement, the Defendants' request that the Court: (a) enter the Consent Order Approving the Settlement Agreement (<u>nunc pro tunc</u> to April 18, 2006); and (b) enter an order granting the Defendants' Motion to Enforce Settlement Agreement.

---

[4] The sales price for the property under the Settlement Agreement is $347,000. The property was appraised in April as having a value of $475,000. The difference between those two numbers is $128,000.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

_____
James D. Sadowski, No. 446635
1620 L Street, N.W. - Suite 900
Washington, D.C. 20036-5605
(202) 452-1400
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Defendants' Brief Regarding Jurisdiction to Enforce Settlement Agreement was filed electronically with the Court this 30th day of May, 2006 and sent by first class mail and electronic mail (as indicated) to the following person(s)

> Jonathan C. Dailey
> 1610 Little Raven Street
> Unit 410
> Denver, CO 80212
> *Pro Se Plaintiff*
> Jonathan@ClearCreekPartners.com

James D. Sadowski

290253v1