IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN C. DAILEY,

     *Plaintiff,*

v.

SUNGAH PARK, et al.,

     *Defendants.*

Case No.: 1:05-CV-02012
Judge Ricardo M. Urbina

## DEFENDANTS' MOTION TO
## <u>REINSTATE PROTECTIVE ORDER PAYMENTS</u>

COMES NOW THE DEFENDANTS, Sungah Park and Ayal Factor, by counsel, and hereby move this Honorable Court to re-instate the Protective Order in this case to require that the Plaintiff, Jonathan Dailey, pay at least $2,876.01 per month into the Court Registry (as of May 1, 2006) until the Court issues a decision on the two pending Motions to Enforce Settlement Agreement.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

James D. Sadowski, No. 446635
1620 L Street, N.W., Suite 900
Washington, D.C.  20036-5605
*Counsel for Defendants Sungah Park*
   *& Ayal Factor*

LAW OFFICES
GREENSTEIN DELORME & LUCHS, P.C.
1620 L STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20036-5605
AREA CODE 202-452-1400

CERTIFICATE REGARDING CONSENT

I HEREBY CERTIFY that prior to filing this Motion I attempted to obtain consent to this Motion, but consent was refused.

_____
James D. Sadowski

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of Defendants' Motion to Reinstate Protective Order Payments was filed electronically with the Court this 5th day of June, 2006, and that the following person should receive notice electronically via the Court's ECF system:

Jonathan C. Dailey
1610 Little Raven Street
Unit 410
Denver, CO 80212
*Pro Se Plaintiff*

_____
James D. Sadowski

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN C. DAILEY,

     *Plaintiff,*

v.

SUNGAH PARK, et al.,

     *Defendants.*

Case No.: 1:05-CV-02012
Judge Ricardo M. Urbina

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO REINSTATE PROTECTIVE ORDER PAYMENTS

The Defendants, Sungah Park and Ayal Factor, by counsel, have moved this Honorable Court to reinstate the protective order payments to be made into the Court Registry. In support of their Motion, the Defendants state as follows:

### BRIEF FACTUAL AND PROCEDURAL BACKGROUND

1.     On January 11, 2006, the Court issued a Consent Protective Order ("Protective Order"). The Protective Order required that the Plaintiff, Jonathan C. DAILEY ("DAILEY"), make payments of $1,500 per month into the Court Registry effective as of December 1, 2005.

2.     On January 14, 2006, Defendants filed a Motion to Increase Protective Order Payments ("Motion to Increase") to cover the actual carrying costs for the Property ($2,867.01 per month) and to compel DAILEY to post additional funds into the Court Registry for a lien and debt that DAILEY had caused to be incurred at the Property that is the subject of this litigation.

3.     The Court denied the Motion to Increase by Order dated February 21, 2006 ("Order"). In its Order, the Court based its decision on two reasons: first, potential tax consequences; and second, DAILEY's apparent "financial fragility" and the Court's belief that

$1,500 was a "reasonable intervening rent." At that time, the Court had reviewed DAILEY'S

Opposition to the Motion to Increase, which concealed from the Court the fact that Dailey was

receiving monthly rental income from a subtenant of $2,250.00 per month effective November

15, 2005. See Exhibit A (e-mail from Mr. Antoine DeCarbonel disclosing rental rate being paid

to DAILEY's broker).[1]

4.       The parties entered into a written settlement agreement at the mediation held on

March 12, 2006 (Mediation Agreement") and a subsequent written Settlement Agreement and

Mutual Release ("Settlement Agreement"), each of which contemplated that no protective order

payment would be made for the month of April of 2006. The reason that the parties initially

anticipated that no further protective order payments would be made was because the Settlement

Agreement provided that DAILEY must complete his repurchase of the Property by April 27,

2006, and if he did not, one of two stipulations of dismissal would be filed within five days of

April 27, 2006.[2]

5.       There are presently two motions before the Court to enforce the Settlement

Agreement – one filed by DAILEY and another filed by the Defendants. It is not known how

long it will take for those motions to be decided or whether a hearing will need to be scheduled.

---

[1]    At that time, the only evidence before the Court as to the reasonable rental value of the Property was the Defendants' calculation of carrying costs, which DAILEY had previously been paying. DAILEY did not provide the Court with any evidence concerning the reasonable rental value of the Property, so it is not known how the Court concluded that $1,500 was "reasonable intervening rent" for a newly-renovated high-end condominium apartment located in Georgetown. Had DAILEY actually disclosed the rental rate that he was receiving from his subtenant, it is likely that the Court would have had a completely different perspective.

[2]    The terms "Motion to Reinstate Protective Order Payments" are sort of misnomers as the existing Protective Order was not formally modified or vacated by the Court. Although the existing Protective Order was never modified by the Court, the parties agreed in the Settlement Agreement that the April 2006 protective order payment would not have to be made by DAILEY. No agreement was reached as to potential protective order payments to be made after April of 2006 if DAILEY breached the Settlement Agreement.

2

6.     DAILEY did not make any Protective Order payments on time and has not made a payment since March of 2006. DAILEY made the March 2006 payment late, in violation of the existing Protective Order, and in response to a show cause order issued to him by the Court.

7.     DAILEY continues to receive rental income for the Property while paying no rent or other amounts to Defendant Park. Although Dailey's payment of $1,500 per month did provide some degree of protection to Defendant Park, that amount is inadequate protection because the carrying costs of the Property are almost double that amount. See Exhibit B. As Defendants' pointed out in their Motion to Increase, as of January 2006, Ms. Park had to pay a monthly mortgage interest payment of $1,268.70, property taxes of $395.93, a monthly condo fee of $601.88, and a special assessment of $450.50 (Total = $2,867.01). Id.

8.     DAILEY has not made any rent payments to Defendant Park since paying April 2005 charges. DAILEY has essentially been living in the Property or enjoying its use "rent free" for more than a year. As of May 15, 2006, DAILEY should have received $15,750.00 from his subtenant. While DAILEY has continued to collect rent and enjoy the use and benefit of the Property "rent free," Defendant Park has been paying the mortgage (included in the mortgage payment are property taxes, real estate taxes, the monthly condominium maintenance fees) and special assessments.

ARGUMENT

9.     The use of the protective order as an equitable device by this Court is well-established in this jurisdiction. A protective order is used to protect a landlord from "the severe disadvantages of foregoing rent during a period of prolonged litigation." Dameron v. Capitol House Assocs. Ltd. P'ship, 431 A.2d 580, 583 (D.C. 1981); Bell v. Tsintolas Realty Co., 430 F.2d 474, 482 (D.C. Cir. 1970). The issuance of a protective order has become the norm, rather

3

than the exception. See Mahdi v. Poretsky Management, Inc., 433 A.2d 1085, 1086 (D.C. 1981).

Factors that the Court should consider when entering a protective order are: "the amount of rent

alleged to be due, the number of months the landlord has not received even a partial rental

payment, the reasonableness of rent for the premises, the amount of the landlord's monthly

obligations for the premises, . . . and whether the landlord faces a substantial threat of

foreclosure." Dameron, 431 A.2d at 583, n5 (citing Bell, 430 F.2d at 484).[3]

   10. In the Order, the Court did not address the five Bell factors, instead citing to

Thompson v. Mazo, 421 F.2d 1156 (D.C. Cir. 1970).   The Court also appeared to indicate that

some weight must be given to the fact that the Defendants did not take into account the tax

advantages of a mortgage payment.

   11. Defendants are not aware of any case law that supports the Court's novel use of a

"tax benefit" factor when evaluating the amount of the protective order payment.  Litigants are

supposed to stand on equal footing before this Court.  A landlord's superior financial position, or

a landlord's ability to take a tax deduction, are simply not relevant factors in the protective order

analysis.  That type of analysis raises serious equal protection concerns.  More importantly, an

inability to pay is also not a defense to either a possession complaint or to having to make a

protective order payment. See Davis v. Rental Associates, Inc., 456 A.2d 820 (D.C. 1981)

("Inability to pay rent due to poverty or lack of funds has never been, and is not now, a defense

to a possessory action based on nonpayment."); Dameron v. Capitol House Associates Limited

Partnership, 431 A.2d 580, 583 (D.C. 1981) (tenant is not unnecessarily burdened by the

protective order because current rental payments are a contractual obligation which he

voluntarily assumed at the initiation of the tenancy) see also Davis, 456 A.2d at 827 (as the

---

[3] Defendants cite mainly to D.C. Court of Appeals cases because that court is responsible for developing most of
the protective order jurisprudence in the District.

protective order is a preliminary safeguard for the parties and the integrity of the judicial process, and because such orders were intended to preserve a balance in landlord-tenant proceedings, any failure to comply in all respects with such an order should not be regarded lightly).

12.    Defendants contend that a careful reading of the <u>Thompson</u> case supports, rather than hurts, the Defendants' position.  In <u>Thompson</u>, at issue was the amount of an undertaking to be posted – not a discussion of the factors that the Court must look to in determining what constitutes "reasonable intervening rent."  The parities in <u>Thompson</u> agreed that $150 was a reasonable monthly rental rate.  Similarly, in this case the parties agreed in the Repurchase Option Contract that:

> Rent shall include the mortgage payment plus the condo fee.  If the rent is more than fifteen (15) days late, a fee of $75 will be added to that month's rent. If the rent is more than thirty (30) days late, Seller must exercise the repurchase option with thirty (30) days thereafter or this Agreement is null and void.  After the first year, <u>rent shall equal the mortgage interest only, property taxes, and condo association monthly fee</u>.

<u>See</u> Exhibit C at 1, Section 6 (emphasis added).

The trial judge in <u>Thompson</u> committed error by requiring an indigent defendant to post projected intervening rent in a lump sum.  <u>Thompson</u>, 421 F.2d at 1162.  DAILEY is not indigent and, as the Court now knows, DAILEY has been charging $2,250.00 from his subtenant for rent since November 15, 2005.

13.    The Court should reinstate the protective order in this case and increase the payment to $2,876.01 per month, effective <u>nunc pro tunc</u> to May 1, 2006.  This will preserve the status quo until the two pending motions are decided.  DAILEY cannot legitimately argue that a protective order payment in that amount is unreasonable because that amount is only slightly more than what DAILEY negotiated with the subtenant as a reasonable monthly rental rate.

14.    Had DAILEY purchased the Property by April 27, 2006, he would have had to pay the carrying costs for the Property moving forward, so there would be no prejudice to DAILEY if he has to make additional protective order payments until the two pending motions are decided.  Once the Court decides those motions, a determination can be made as to the distribution of the additional amounts that are deposited.[4]

15.    Defendant Park will be at a distinct disadvantage if the Court does not reinstate the Protective Order as DAILEY will be able to continue to collect rent from the subtenant while paying nothing toward the costs of carrying the Property.

WHEREFORE, for these reasons, and for any reasons that may be advanced at a hearing on this Motion, Defendant Sungah Park and Ayal Factor, respectfully request that the Court: (a) increase the protective order payment to $2,867.01 per month (retroactive to May 1, 2006); and (b) Order Dailey to pay that amount on a monthly basis until the Court issues a decision on the pending motions to enforce settlement agreement.  A proposed order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

James D. Sadowski, No. 446635
Richard W. Luchs, No. 243931
1620 L Street, N.W. - Suite 900
Washington, D.C.  20036-5605
(202) 452-1400
*Counsel for Defendants Sungah Park*
*& Ayal Factor*

290471v1

---

[4]    The Settlement Agreement provides for a mechanism to distribute the funds ($6,000) that were on deposit in the Court Registry as of March 12, 2006.

6