IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN C. DAILEY, | : |
| Plaintiff, | : |
| v. | : |
| SUNGAH PARK, | : No. 1:05-cv-02012 |
| and | : Judge Ricardo M. Urbina |
| AYAL FACTOR, | : |
| Defendants. | : |

**DEFENDANTS' SUPPLEMENT TO THEIR MOTION TO
REINSTATE PROTECTIVE ORDER PAYMENTS AND TO
PENDING MOTIONS TO ENFORCE THE SETTLEMENT AGREEMENT**

COME NOW THE DEFENDANTS, Sungah Park and Ayal Factor ("Defendants"), by counsel, and hereby file this Supplement to appraise the Court of recently obtained information that is relevant to both Defendants' Motion to Reinstate Protective Order and to the pending motions to enforce the Settlement Agreement. To supplement the record in this matter, Defendants state as follows:

I.   **BRIEF FACTUAL AND PROCEDURAL BACKGROUND**

Defendants filed a Motion to Reinstate the Protective Order Payments ("Motion to Reinstate") in an effort to preserve the status quo while the court considers the pending motions to enforce the Settlement Agreement. In the Motion to Reinstate, which was filed on June 5, 2006 and remains pending, Defendants have requested that the monthly protective order payment be reinstated, and further, that it be increased to Two Thousand Eight Hundred Sixty-Seven Dollars and One Cent ($2,867.01) per month effective May 1, 2006. The Plaintiff, Jonathan C. Dailey ("Dailey"), has filed an Opposition to the Motion arguing, *inter alia,* that a lawsuit filed

by ServPro, the threat of a lawsuit by the Minkoff Company, and the potential financial implications of each, justifies allowing Dailey not to pay a protective order.  Dailey argues that he should not have to make any protective order payment, while at the same time he continues to collect rent from a subtenant to whom he sublet the property that is the subject of this litigation.[1] the apartment subject .  Defendants' counsel has recently obtained additional information concerning Dailey that is relevant to the Motion to Reinstate and that has a bearing on Dailey's claims that he was ready, willing and able to go to closing on April 27, 2006.

## II.   DAILEY IS A DEFENDANT IN VARIOUS OTHER LITIGATION, THE DISCLOSURE OF WHICH WOULD HAVE IMPACTED HIS ABILITY TO OBTAIN FINANCING

Defendants have learned that a $44,630.20 judgment was entered against Dailey on March 16, 2006 in <u>Richard F. Silber, P.C. v. Dailey</u>, Case No. 05-CA-1110 (D.C. Super Ct.) ("Dailey II").  A copy of the Amended Order entering summary judgment against Dailey is attached as Exhibit 1.  Defendants' counsel has further learned that Dailey has breached another settlement agreement.  Dailey previously settled a civil case filed against him by a former colleague by agreeing to make payments pursuant to a promissory note.  The first case, <u>Richard F. Silber, P.C. v. Jonathan C. Dailey</u>, Case No. 04-CA-042070 (D.C. Super. Ct.) ("Dailey I"), was dismissed as a result of a settlement agreement reached with Dailey, which involved Dailey providing Richard F. Silber, P.C. with an Installment Promissory Note ("Note") in exchange for the dismissal of Dailey I.  <u>See</u> Exhibit 2 (Transcript of Dailey's deposition in Dailey II) and Exhibit 3 (Praecipe dismissing Dailey I).  Dailey then breached that settlement agreement by failing to make payments due under the Note, which caused a second lawsuit to be filed against him (Dailey II).  In Dailey I and Dailey II, Dailey filed an Answer and asserted a variety of

---

[1] Dailey sublet the property without the Defendants' consent and at a time that he knew that ownership of the property was the subject of this litigation.

2

boiler-plate defenses, all of which were ultimately determined to be without merit as summary judgment was entered against him in Dailey II. A copy of the Answers filed in Dailey I and Dailey II are attached together as Exhibit 4.[2]

Defendants' counsel has also learned that on or about June 17, 2005, Dailey was convicted of simple assault in the D.C. Superior Court for the District of Columbia in <u>United States v. Jonathan C. Dailey</u>, Case No. M1262-05 ("Dailey III"). A copy of the Judgment and Commitment Order in Dailey III is attached as Exhibit 5. While Defendants may not be able to use the misdemeanor criminal conviction in Dailey III to impeach Dailey's credibility, of greater importance is the fact that Dailey was sued civilly by the victim in that same incident on January 2, 2006 in <u>Yelena Smith v. v. Dailey, et. al.</u> (D.C. Super. Ct. 2006) ("Dailey IV"). A copy of the Complaint in Dailey IV, which seeks $5 million in damages, is attached as Exhibit 6. According to the Complaint in Dailey IV, Dailey arrived at a party intoxicated, and while there he punched a female house guest in the face several times, knocking her to the floor. <u>See</u> Exhibit 6, ¶¶ 11-17. Given that Dailey was already convicted of criminal assault in Dailey III, it appears likely that the civil claims of assault in Dailey IV will be easily proven.

It is not known whether Mr. Dailey disclosed the existence of the judgment in Dailey II or the existence of Dailey IV on the mortgage application that he had to complete in order to fulfill his closing obligations in the Settlement Agreement. That is because the only evidence that Dailey has presented to prove that he obtained financing consists of an unsigned, mortgage pre-qualification application. <u>See</u> Exhibit 2 to Plaintiff's Motion to Enforce Closing of Property Under Settlement Agreement Or, In the Alternative, to Declare Settlement Agreement Void and Proceed with Litigation. Defendants have attached a copy of the Universal Residential Loan

---

[2] When one compares the Answer that Dailey belatedly filed to the Counterclaim in this case to the Answers that he filed in Dailey I and Dailey II, one can see that the Answers are near carbon copies of one another.

3

Application that most mortgage lenders use.  See Exhibit 7 at page 3, Part VIII (Declarations).  If a hearing is scheduled on the motions to enforce the Settlement Agreement, Defendants will request that they be permitted to subpoena Dailey's mortgage lender to obtain Dailey's mortgage application so as to determine if Dailey disclosed the existence of these two, significant lawsuits, which, from Defendants' perspective, would have effectively prevented Dailey from obtaining a loan.  If Dailey could not obtain a mortgage loan, he would not have been able to go to closing on April 27, 2006.  The existence of these two cases also is an indication that Dailey signed the Settlement Agreement knowing that he would not be able to comply with its terms.[3]

### III.  DAILEY'S CLAIMS OF FINANCIAL HARDSHIP HAVE NO RELATIONSHIP TO THIS CASE OR TO DEFENDANTS' CONDUCT.

Dailey has argued that he cannot make an increased protective order payment due to hardship created by pending or threatened litigation filed by ProServ and The Minkoff Company.  Dailey further opines that those two creditors are chasing him as result of Defendants' conduct.  Defendants assert that those matters are not the source of Dailey's financial troubles.  Defendants submit that Dailey's financial troubles pre-date his relationship with the Defendants.  The fact that multiple creditors are pursuing Dailey is all the more reason why the Court should immediately reinstate the Protective Order.  With each passing day that Dailey fails to make a protective order payment into the Court Registry, the likelihood that Defendants will have a source of recovery diminishes.  As it stands, Dailey has collected at least $9,000 from his subtenant since the motions to enforce the Settlement Agreement have been pending.[4]  No

---

[3]  It should also be noted that Dailey objected to, and refused to respond to, Defendants' discovery requests seeking information about pending civil cases filed against him.  It is now obvious to Defendants that Dailey was trying to conceal the existence of these two cases.  Regrettably, this is not the first time that Dailey has engaged in concealment tactics.  See Defendant's Opposition to Plaintiff's Motion to Extend Protective Order, at 2-3, n.1 and n.2.

[4]  Dailey's subtenant has stated in writing that he has been paying Dailey $2,250 per month in rent since moving in on November 15, 2005.

4

portion of those funds have been paid into the Court Registry, while at the same time Defendants continue to shoulder the burden of paying the carrying costs for the property. A tenant is not supposed to reap the benefits of use and occupancy of a landlord's property without paying just compensation in the form of a protective order. In the instant matter, Dailey continues to receive benefits (i.e., subtenant income) from the property while paying nothing into the Court Registry and nothing toward the mortgage for the property. The inequity of that arrangement is readily apparent. Had Dailey closed on the property -- as required by the Settlement Agreement -- he would have been responsible for paying his own mortgage. With no Protective Order in place, the Court is effectively letting Dailey get off "scot-free" as he is making no payment related to the property.

### IV.    CONCLUSION/REQUEST FOR RELIEF

The new information obtained by the Defendants indicates that Dailey may have once again come before this Court with unclean hands. This information also lends further support for the Defendants' position in both the Motion to Reinstate and Defendant's Motion to Enforce the Settlement Agreement. Accordingly, Defendants urge the Court to reinstate the Protective Order, in an increased amount, as soon as possible. Defendants also respectfully request that the Court grant their Motion to Enforce the Settlement Agreement, which can be decided in Defendants' favor without a hearing, as Dailey has conceded various breaches of the Settlement Agreement. In the event that the Court determines that it must take evidence in order to decide the competing motions to enforce the Settlement Agreement, Defendants request that they be permitted to subpoena all records related to Dailey's mortgage application and to Dailey's claim that he was prepared to go to closing by April 27, 2006. Defendants contend that it is highly likely that Dailey would <u>not</u> have been able to do so given the existence of a five figure judgment

against him and further given that another, multi-million dollar suit was pending against him at the time he signed the Settlement Agreement.

>Respectfully submitted,
>
>GREENSTEIN DELORME & LUCHS, P.C.

Dated: August 17, 2006

James D. Sadowski, No. 446635
Richard W. Luchs, No. 243931
Joshua M. Greenberg, No. 489323
1620 L Street, N.W.
Suite 900
Washington, DC 20036-5605
Telephone: (202) 452-1400

*Counsel for Defendants*

295694v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of Defendants' Supplement to Their Motion to Reinstate Protective Order Payments and to the Pending Motions to Enforce the Settlement Agreement was filed electronically with the Court this 17th day of August, 2006, and that the following person should receive notice electronically via the Court's ECF system:

>Jonathan C. Dailey
>3 Bethesda Metro Center
>Suite 530
>Bethesda, MD 20814
>*Pro Se Plaintiff*

_____
James D. Sadowski