**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JONATHAN C. DAILEY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-2012 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 24, 32, 37 |
| | : | | |
| SUNGAH PARK, | : | | |
| AYAL FACTOR, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION TO ENFORCE; DENYING THE DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REINSTATEMENT; DENYING THE PLAINTIFF'S MOTION TO STRIKE;
HOLDING THIS CASE IN ABEYANCE**

**I.    INTRODUCTION**

The parties in this case dispute their rights under a repurchase agreement to a

condominium.  With Judge Kay's assistance, the parties drafted and signed a settlement

agreement.  The settlement agreement anticipated a closing date for the sale of a condominium

unit and set forth contractual requirements for both parties in working toward this closing.  Under

the terms of the settlement agreement, if the closing went forward as contemplated in the

settlement agreement, the parties would jointly file a praecipe of dismissal with prejudice.  If the

closing did not proceed as planned, the parties would jointly file an alternative praecipe of

dismissal with prejudice.  The parties are now before the court, each arguing that the other

breached the settlement agreement.  Accordingly, each side is asking the court to enforce the

settlement agreement in its favor.  Pl.'s Mot. to Enforce; Defs.' Opp'n to Pl.'s Mot. to Enforce

("Defs.' Opp'n").

The court, working under the assumption that the cause lies outside of the court's limited

jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), ordered the

parties to submit briefing to the court addressing the court's jurisdiction to entertain the present

controversy.  Having reviewed the parties' briefings, the court is now confident that it lacks

jurisdiction to entertain the parties' dispute over the settlement agreement.  Accordingly, the

court denies the plaintiff's motion to enforce and holds this case in abeyance pending resolution

of the controversy surrounding the parties' settlement agreement.

## II.    BACKGROUND

On March 15, 2006, the parties in this case executed a settlement agreement and mutual

release.  Consent Mot. to Approve Settlement Agreement, Ex. A.  This contract required the

plaintiff to complete the purchase of the condominium by 6:00 p.m. on April 27, 2006.  *Id.* at 2.

The closing did not proceed on April 27, 2006 as contemplated by the contract, and the

defendants, therefore, claim that the plaintiff breached the settlement agreement.  *See generally*,

Defs.' Opp'n.

The plaintiff attributes his inability to close on the property by 6:00 p.m. on April 27,

2006 to the defendants' actions.  Specifically, he claims that they took actions to deliberately

frustrate the plaintiff's ability to obtain paperwork necessary for the scheduled closing.[1]  *See*

*generally*, Pl.'s Mot. to Enforce.

The parties' settlement agreement required the parties to "submit the terms of the

Settlement Agreement to Judge Urbina for approval."  Defs.' Opp'n, Ex. 6 at 5.  Seven days

---

[1]    Under the settlement agreement, the parties had a mutual obligation to "execute and deliver to each other such additional documents as may be necessary or appropriate to consummate the transactions contemplated" by the agreement.  Consent Mot. to Approve Settlement Agreement, Ex. A at 5.

before the scheduled closing, the parties filed a motion to approve the settlement agreement.  The

court did not rule on the parties' motion.

Instead, as the deadline for the settlement drew near, the court participated in several

conference calls with the parties and various third-parties to the imminent closing.  The purpose

of these conference calls was to lend the court's assistance to the parties in closing on the

property as anticipated by the settlement agreement.  Despite this assistance, the settlement did

not go forward as planned.  The parties have now filed a flurry of motions, each arguing for the

court to enforce the terms of the settlement agreement in their respective favor.


### III.    ANALYSIS

#### A.    Legal Standard for Federal Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.*

*Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a

court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no

action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v.*

*Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v.*

*Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  To determine whether it has

jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v.*

*Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.     The Court Lacks Ancillary Jurisdiction over the Parties' Settlement Agreement**

The parties' settlement agreement states that the parties will "submit the terms of the

Settlement Agreement to Judge Urbina for approval.  Judge Urbina (not a jury) will retain

jurisdiction to enforce the Settlement Agreement and to decide the validity of any claim

regarding compliance with the Settlement Agreement."  Consent Mot. Ex. A at 5.  On April 20,

2006, the parties filed with the court a motion to approve the settlement agreement.  *Id.*  The

court did not rule on the parties' motion.  Rather, the court participated in several conference

calls with the parties to entice settlement.

The defendants maintain that the court has ancillary jurisdiction over the settlement

agreement.  To them, the court's participation with the parties to assist in settlement efforts

constituted judicial imprimatur for the settlement agreement.  Defs.' Brief Regarding Jurisdiction

("Defs.' Brief") at 2.  Simply put, they argue that though the court did not act formally on the

parties' motion to approve the settlement agreement, the court's advisory assistance with the

parties sufficed for *de facto* judicial ratification of the agreement.  The court cannot agree.

In *Kokkonen*, the Supreme Court squarely addressed the jurisdiction of federal courts to

entertain disputes arising from settlement agreements.  *Kokkonen*, 511 U.S. 375.  In that case, the

parties filed a stipulation and order of dismissal with prejudice with the court.  *Id.* at 376.  The

district judge, in signing the order, noted simply "[i]t is so ordered."  *Id.*  The judge's order did

not explicitly reserve jurisdiction to enforce the settlement agreement.  *Id.*  The Supreme Court

concluded, therefore, that the district judge's order did not confer jurisdiction over enforcement

of the settlement agreement.  The Court noted that "[e]nforcement of the settlement agreement . .

. is more than a continuation or renewal of the dismissed suit, and hence requires its own basis

4

for jurisdiction." *Id.* at 378. Emphasizing that what the respondent was seeking was

"enforcement of the settlement agreement," the court stated that no "provision of law provides

for jurisdiction of the court over disputes arising out of an agreement that produces the

stipulation [of dismissal]." *Id.*

The defendants claim that the court has ancillary jurisdiction over the parties' settlement

agreement. Defs.' Brief at 3-4. But *Kokonnen* clearly addressed the limitations of ancillary

jurisdiction: (1) "to permit disposition by a single court of claims that are, in varying respects and

degrees, factually interdependent," and (2) "to enable a court to function successfully, that is, to

manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 379-380;

*Foretich v. Am. Broad. Co., Inc.*, 198 F.3d 270 (D.C. Cir. 1999). In this case, neither of these

instances are present.

First, the underlying claims in this case and the motion to enforce are not "factually

interdependent" because the former constitutes a contract dispute over a repurchase option

contract while the latter constitutes a contract dispute arising from the alleged breaches of a

settlement agreement. *Kokonnen*, 511 U.S. at 379. As the *Kokonnen* Court recognized,

enforcement of a settlement agreement is factually independent from the underlying cause of

action and "requires its own basis for jurisdiction."[2]  *Id.* at 378; *see also Peacock v. Thomas*, 516

U.S. 349, 358 (1996) ("caution[ing] against the exercise of jurisdiction over proceedings that are

entirely new and original") (internal quotations omitted).  Second, because the court did not rule

on the parties' motion for approval of the settlement agreement (and therefore did not approve

the settlement agreement), exercise of ancillary jurisdiction in this case would not further the

court's power to "vindicate its authority, and effectuate its decrees."  *Id.*  In *Kokonnen*, the

Supreme Court distinguished a previous ruling in *Julian v. Central Trust Co.*, 193 U.S. 93

(1904), in which the court "had *expressly reserved* jurisdiction" to adjudicate certain ancillary

claims.  *Kokonnen*, 511 U.S. at 380.  Here, in contrast to *Julian*, and like the circumstance

presented to the Court in *Kokonnen*, the court did not grant the parties' motion to approve the

settlement agreement.  Without a formal judicial act, the parties' agreement remains a privately

created agreement between two parties who happen to be litigating a wholly different issue in

this court.  *Kokonnen*, 511 U.S. at 378.  To conclude that the court has jurisdiction over the

parties' private agreement simply because it contemplates, as one of its terms, that the parties

will file a stipulation of dismissal in this case, would vastly expand the reach of federal court

---

[2]        In *Foretich*, the D.C. Circuit ruled that it had ancillary jurisdiction over a settlement
        agreement which, through its enforcement, would moot a pending motion for attorneys'
        fees in the district court.  *Foretich v. Am. Broad. Co., Inc.*, 198 F.3d 270, 273 (D.C. Cir.
        1999).  The court reached this conclusion because the enforcement of the settlement
        agreement allowed the district court to resolve pending motions so as to give effect to its
        previous opinion granting the defendant's motion for summary judgment.  *Id.*, 198 F.3d
        at 274.  In contrast to *Foretich*, the court in this case has issued no opinion on the
        underlying merits and, therefore, has no decree to effectuate.  The court in *Foretich* took
        pains to note that both the district court and the D.C. Circuit's analyses were limited to
        whether a valid settlement agreement in fact existed.  *Id.* at 274 n.5.  The court did not
        "reach the closer issue of whether enforcing the settlement agreement with affirmative
        relief such as a mandatory injunction would have been within the district court's
        jurisdiction."  *Id.*

jurisdiction.

The defendants argue, however, that through the court's awareness of the parties'

settlement agreement and participation in conference calls with the parties, "the court has already

ratified [the settlement agreement] by words and by conduct." Defs.' Brief at 6.  The Supreme

Court made clear, however, that the "Judge's mere awareness and approval of the terms of the

settlement agreement do not suffice to make them part of the order." *Kokonnen*, 511 U.S. at 381.

That is, without incorporation of the terms of the parties' settlement agreement into a judicial

order, the court does not have jurisdiction to enforce the terms of the settlement agreement. *Id.* at

380.  Instead, the court's informal involvement with the parties in their efforts to settle their case

arose from "the readiness of the courts to lend a helping hand, and of the role that judges, if need

be, can play in the resolution of the difficulties."[3] *Autera v. Robinson*, 419 F.2d 1197, 1199-1200

(D.C. Cir. 1969) (recognizing that the federal bench "could hardly afford to do less than nurture

---

[3]        In *Autera*, the D.C. Circuit recognized that a court may enforce a settlement agreement
when "the excuse for nonperformance is comparatively unsubstantial." *Autera v.
Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969).  As the defendants' correctly note, the
D.C. Circuit recognized that "[i]t is now well established that the trial court has power to
summarily enforce on motion a settlement agreement entered into by the litigants while
the litigation is pending before it." *Id.*  The Circuit's understanding of summary
enforcement of settlement agreements is limited, however, to the "typical situation . . .
where there is no factual dispute and no legal defense to enforcement." *Id.*  In stark
contrast, the parties' current dispute over their settlement agreement involves both
factual and legal claims.  Indeed, the complexity of the parties' claims arising from their
settlement agreement appears to the court to vastly surpass those issues presented in the
underlying case. *See* Pl.'s Mot. to Enforce; *See* Defs.' Opp'n to Pl.'s Mot. to Enforce;
*See* Defs.' Mot. for Entry of a Protective Order; *See* Pl.'s Opp'n to Defs.' Mot. for Entry
of a Protective Order; *See* Defs.' Supp. to their Mot. to Reinstate Protective Order; *See*
Defs.' Rebuttal Mem.; *See* Pl.'s Mot. to Strike.  For this reason, enforcement of the
settlement agreement constitutes an instance "ill-suited" for summary enforcement
because it "present[s] complex factual issues related either to the formation or the
consummation of the contract, which only testimonial exploration in a more plenary
proceeding is apt to satisfactorily resolve." *Autera*, 419 F.2d at 1200.  In this instance,
and as the *Autera* court recognized, "the convenience of the summary procedure must
yield to the exigencies of safeguarding all legally protected rights that are involved." *Id.*

conditions that for so many years have fostered the machinery of compromise," and

distinguishing judicial assistance through "informal, ad hoc procedures" from the more

traditional "full-dressed proceeding[s]").

The defendants also attempt to distinguish this case from *Kokonnen* by noting that unlike

in *Kokonnen*, the court here had not dismissed the case. Defs.' Brief at 3. Their argument is

unconvincing. Although this court did not dismiss the underlying lawsuit, the Court's ruling in

*Kokonnen* was not predicated upon the fact of the dismissal. Rather, the *Kokonnen* Court's

primary concern with the exercise of federal court jurisdiction over the settlement agreement was

that enforcement of the agreement constituted more than just a continuation of the suit and that

without formal judicial sanction, enforcement of a settlement agreement does not satisfy either

prong necessary for ancillary jurisdiction. *Kokonnen*, 511 U.S. at 378, 380. Accordingly,

whether the underlying dispute is a live controversy is of no moment. Simply put, the court

would no less violate the outer limits of ancillary jurisdiction in resolving the parties' privately

created settlement agreement because of their still live controversy, as it would if the court had

already dismissed the underlying suit.

Indeed, the court cannot find language better able to sum its conclusion than that supplied

by the defendants. The defendants remind the court that "the validity of the Settlement

Agreement was not conditioned upon court approval," but that the "Settlement Agreement

explicitly reserves jurisdiction for this [c]ourt to enforce its terms." Defs.' Brief at 2 n.1, 3.

Unfortunately for the defendants, however, "cases are legion holding that a party may not waive a

defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent."

*Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 25 (1989).

No order of this court adopts the parties' settlement agreement.  It remains, therefore, a privately constituted agreement between the parties devoid of judicial ratification or approval. As such, the court has no basis upon which to "vindicate its authority." *Kokonnen*, 511 U.S. at 380.

### C.    The Court Declines to Exercise Supplemental Jurisdiction

Typically, the federal courts have jurisdiction over tangential matters if they are "so related to claims in the action . . . they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Without reaching that question, the court declines to exercise supplemental jurisdiction because the parties' settlement agreement dispute "substantially predominates over the claim or claims over which the district court has original jurisdiction."  *Id.* § 1367(c); *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994) (recognizing the district court's discretion in refusing to exercise supplemental jurisdiction after concluding that a state law claim "substantially predominates").  Indeed, the end game contemplated by the parties' settlement agreement includes the filing of one of two stipulations of dismissals. Consent Mot. to Approve Settlement Agreement, Ex. A, 4-5.  Thus, enforcement of the settlement agreement in either parties' favor will likely lead to a dismissal of the pending action by this court.  For this reason, it would not serve "the values of judicial economy, convenience, fairness, and comity" for the court to extend supplemental jurisdiction over the parties' settlement agreement dispute.  *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation omitted).

### IV.   CONCLUSION

For the reasons set forth herein, the court lacks jurisdiction to entertain the ancillary enforcement of the parties' independently executed settlement agreement and declines to extend supplemental jurisdiction over the same.  Accordingly, the court denies the plaintiff's motion to enforce.

Because a formal resolution of the parties' dispute concerning their independently executed settlement agreement may dictate the rights of the parties in the case pending before this court, the court denies the defendants' motion for protective order reinstatement, denies the plaintiff's motion to strike, and orders that this case be held in abeyance pending resolution of the controversy surrounding the parties' settlement agreement.[4]  An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 8th day of January, 2007.

RICARDO M. URBINA
United States District Judge

---

[4]    The court continues to believe that informal resolution may constitute the most efficient means of resolving the parties' ongoing disputes.  "After this remarkably long walk on a short legal pier," *Bradshaw v. Unity Marine Corp, Inc.*, 147 F. Supp. 2d 668, 672 (S.D. Tex. 2001), informal resolution would likely prevent a continued waste of time and resources in the disposition of this matter.